**William M. JOHNSON et al., Plaintiffs,**

v.

**Gordon W. HEGGIE et al., Defendants.**

**Civ. A. No. C–3561.**

United States District Court,
D. Colorado.

July 13, 1973.

Walter W. Garnsey, Jr., Jeannette P. Meier, John D. Coombe, Denver, Colo., for plaintiffs.

John P. Moore, Atty. Gen., John E. Bush, Deputy Atty. Gen., Richard G. McManus, Jr., Asst. Atty. Gen., Denver, Colo., for defendants.

## ORDER

FINESILVER, District Judge.

This matter comes before the Court on remand by the United States Court of Appeals for the Tenth Circuit pursuant to a stipulation entered into by counsel for the respective parties.

This is a Civil Rights class action filed by inmates of the Colorado State Penitentiary seeking to compel the Colorado State Board of Parole [hereinafter the Board] to give written reasons for denial of parole. Defendants are the individual members and constitute the Board.

Jurisdiction of the Court is invoked pursuant to 42 U.S.C. Section 1983.

## I.

### STATEMENT OF THE CASE

The plaintiffs are inmates of the Colorado State Penitentiary, Canon City, Colorado, who have served their minimum sentences and pursuant to C.R.S. 1963, 39–18–1(3)(c), as amended (1969 Perm.Cum.Supp.) are eligible for consideration for release on parole. Said plaintiffs have appeared before the Board for parole consideration, and parole in each instance was denied.

The crux of the matter facing the Court is the inconsistency of notification to inmates regarding rejection of parole and the failure of the Board to provide inmates with written reasons why parole was denied.

On September 7, 1971, the plaintiffs sent a formal written request to the defendants for written reasons for denial of parole, but no response was forthcoming and defendants persist in their policy of not disclosing the reasons for the denial of parole. Subsequently, on No-

vember 26, 1971, this Civil Rights action was commenced.

On December 27, 1971, defendants moved to dismiss this action with prejudice on the grounds that, *inter alia*, the complaint failed to state a claim upon which relief could be granted. The matter was set for a hearing and by Court Order dated June 2, 1972, plaintiffs' case was dismissed without prejudice. At that time the Court stated:

"The Court is also aware that resort to the State Courts is not a prerequisite for maintaining an action under the Federal Civil Rights Act, but it nevertheless is concerned in this case that the State Courts have not had an opportunity to make some determinations. This is so because this action deals with the normal operational procedure of the Board and of the Colorado State Penitentiary.

"The Court is of the opinion, therefore, that the plaintiffs should first take their case before the Courts of the State of Colorado before it shall render a decision in this matter. In making this decision the Court is cognizant of the vast rule-making power of the Board and notes that a Court mandate is not necessary for the Board to adopt such changes as may be required.

"[I]f no adequate relief is obtained in the State's Courts, this forum would be open at that time to the plaintiffs for an expeditious relitigation of the issues involved herein."

The Court relying on Monks v. New Jersey State Board of Parole, 58 N.J. 238, 277 A.2d 193 (1971), also stated that:

"The Court is convinced that the modern trend toward prison reform would include informing an inmate denied parole of the reasons for denial either directly or indirectly but factually and based upon certain predetermined standards. Communication between parole officials and inmates must be established and maintained and should be consistent. The testi-

mony in the case at bar indicates a lack of communication with and inconsistency of notification to inmates."

Plaintiffs' motion to reconsider was subsequently denied and an appeal was duly noticed. However, pursuant to a stipulation by the parties this matter was remanded by the United States Court of Appeals for the Tenth Circuit on February 5, 1973.

On February 26, 1973, the Board adopted and approved certain Rules and Regulations which are in full force. For purposes of this action the following current Rules and Regulations become important:

"VII. Hearings for Consideration of Parole

\* \* \* \* \* \*

H. Decisions of the Board shall be transmitted promptly to the inmates concerned.

I. In the event that an inmate's application for parole is deferred or denied, the *reason for such denial* or deferral shall be maintained as an official record of the Parole Board, and *shall be made promptly available to the inmate,* institution and to the Division of Parole." (emphasis added)

## II.

### APPLICABLE LAW

This Court is well aware of the recent developments in the field of post conviction reforms, including the areas of probation and parole. *See e. g.,* Gagnon, Warden v. Scarpelli, 411 U.S. 778, 93 S. Ct. 1756, 36 L.Ed.2d 656 (1973) ; Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ; Arciniega v. Freeman, 404 U.S. 4, 92 S.Ct. 22, 30 L. Ed.2d 126 (1971) ; Landman v. Royster, 333 F.Supp. 621 (D.C. Va. 1971). *See also* Note, The United States Courts of Appeals: 1971–1972 Term Criminal Law and Procedure, 61 Geo.L.J. 523–538 (1972).

However, the Court also recognizes that the supervision and management of the internal affairs of correctional institutions is within the sound discretion of the institution administrators, and is not subject to judicial scrutiny in the absence of exceptional circumstances. Perez v. Turner, 462 F.2d 1056 (10th Cir. 1972) ; Bethea v. Crouse, 417 F.2d 504 (10th Cir. 1969) ; Graham v. Willingham, 384 F.2d 367 (10th Cir. 1967) ; Cannon v. Willingham, 358 F.2d 719 (10th Cir. 1966).

The challenged reform here is one of first impression in this Circuit, although the issue has been squarely faced by other courts in recent cases. *Compare* United States ex rel. Harrison v. Pace, 357 F.Supp. 354 (D.C. E.D. Pa. 1973) ; Monks v. New Jersey State Board of Parole, *supra,* with Mosely v. Ashby, 459 F.2d 477 (3rd Cir. 1972) ; Madden v. New Jersey State Board of Parole, 438 F.2d 1189 (3rd Cir. 1971) ; Williams v. United States, 327 F.Supp. 986 (S.D. N.Y. 1971) ; Witt v. State ex rel. Eyman, 18 Ariz.App. 120, 500 P.2d 905 (1971).

In Monks v. New Jersey State Board of Parole, *supra,* the court was concerned about the consequences that the furnishing of reasons for denial of parole might have upon the administration of correctional institutions. Notwithstanding the integrity to be afforded the administrative processes, the court was of the opinion that the furnishing of such reasons would not interfere with the expertise or discretion of the parole board, and that any added burdens would be slight and incidental to proper administration. In balance, the court stated:

"The need for fairness is as urgent in the parole process as elsewhere in the law and it is evident to us that, as a general matter, the furnishing of reasons for denial would be the much fairer course; not only much fairer but much better designed towards the goal of rehabilitation." 277 A.2d 197

Judge Masterson in United States ex rel. Harrison v. Pace, *supra,* detailed the requirements of due process in relation to administrative determinations. In

ruling that "[t]he rudiments of procedural due process are not observed unless the administrative body details the reasons for its findings," the court went on to say that:

"The need for a statement of reasons or findings not only insures a responsible and just determination by the agency, but also affords a proper basis for effective judicial review. The New Jersey decision [*Monks*] is consistent with the recent expansion by the United States Supreme Court of due process guarantees with respect to parole revocation proceedings.

\* \* \* \* \* \*

"Consequently, we hold that a prisoner's interest in the grant or denial of parole is entitled to constitutionally protected due process consideration limited to a statement of reasons upon denial of such parole." United States ex rel. Harrison v. Pace, *supra*, 357 F.Supp. at 357.

Further, in the task report of the President's Commission of Law Enforcement and Administration of Justice entitled "Corrections", the Commission made specific comments concerning the manner in which inmates are notified of parole decisions. On pages 64 and 65 of the Commission's report the following comments are noted:

"An illustration of the trend towards 'confrontation' is the way in which inmates are notified of parole decisions. Typically, parole decisions have been communicated in writing or it has been left to others, usually institution staff to tell inmates if parole was granted or denied. They have had little opportunity to discover the reasons for the decisions and discuss them with parole board members. An increasing number of parole boards have adopted the practice of calling inmates back after a hearing to discuss the decision of their cases. Institution staff and board members in these states, for example, Minnesota and Iowa, reported it to be an improvement over prior methods.

"Board members are most helpful when they demonstrate a genuine interest in the welfare of an inmate, and ability to withstand manipulation or deception and a willingness to discuss candidly with an inmate the realities of the case."

## III.

### EVIDENTIARY HEARING; ISSUES

At the evidentiary hearing on the matter at bar the following parole notification structure and practices were elicited:

(1) The Board has the sole power to grant and deny parole.

(2) The Board is authorized, created, and its powers and duties specified in C.R.S.1963, 39–18–1 et seq., as amended. Specifically, in 39–18–1(3)(c), as amended, the Board is empowered to parole inmates of the Colorado State Penitentiary when "there is a strong and reasonable probability that such person will not thereafter violate the law and that his release from institutional custody is compatible with the welfare of society."

(3) C.R.S.1963, 39–18–1(8), as amended, requires at least two members of the Board to interview an inmate concerning any recommendations as to parole. No specific procedures in processing application for parole are specified by statute. The Board is free to proceed in any manner that is not arbitrary.

(4) None of the named plaintiffs have been advised in writing by the Board of the reasons for the denial of their parole. In fact, it is the policy of the Board not to give written reasons to the inmates why parole was denied.[1]

(5) The testimony was conflicting as to whether some of the plaintiffs were advised directly by the Board why parole was not granted.

1. At the time of the hearing the current Rules and Regulations of the Board had not been promulgated.

(6) In some cases parole applicants have been given oral reasons for the denial while others have received no reasons, written or oral, why they did not receive parole.

(7) The defendants notify in writing the institutional staff of the Colorado State Penitentiary and the Division of Adult Parole (not controlled or supervised by the Board) of the reasons why inmates were denied conditional release on parole.

(8) Counselors at the Colorado State Penitentiary have informed some of the plaintiffs the reason or reasons why they have been denied parole while others have received no communication other than to be informed that their application for parole was denied.

(9) Gordon Heggie, chairman of the Board, testified that the Board does not have the resources or responsibility to enter into a counseling relationship with the individual parole applicant, and therefore provides reasons to the other agencies whose function it is to counsel such persons.

Defendants' argument begins "with the long established proposition that early release (be it mandatory release, parole or probation) and revocation hearings are matters of legislative grace not constitutionally mandated." Earnest v. Willingham, 406 F.2d 681, 682 (10th Cir. 1969). In that light, defendants submit that an inmate at a state penal institution is not entitled to parole but only to a discharge at the expiration of his sentence (less, of course, any "good time" credits). Menechino v. Oswald, 430 F.2d 403, 408 (2nd Cir. 1970). Further, an inmate is not entitled to procedural due process in the granting stage of parole. He is only entitled to statutory due process and the statutory scheme of Colorado does not provide for giving reasons for denial of parole. Menechino v. Oswald, *supra*.

Defendants further contend that procedural due process is required only when threatened governmental action may adversely affect a substantial exist-

ing private interest. In the present case the only interest to be protected is the *inmates' interest to be considered* by the Board; and that right is statutory. Defendants argue that an examination of the existing interest of the plaintiffs indicates that any action by the defendants would not adversely affect any such interests. The interest in parole is conditional freedom and this does not occur until the parole is granted.

In essence, then, the asserted issue before the Court is whether inmates of a state penal institution have a constitutionally protected interest in being informed of the reasons for the denial of parole. Determination of whether some form of minimal due process attaches to this aspect of the parole proceeding does not hinge upon whether the governmental benefit conferred, *i. e.*, conditional freedom prior to the running of the particular sentence imposed, is characterized as a " 'right' or as a 'privilege' ", assuming the existence of a constitutional right. Graham v. Richardson, 403 U. S. 365, 374, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). *See also* Board of Regents v. Roth, 408 U.S. 564, 571n.9, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Rather, inquiry is directed "to the *nature* of the interest at stake" in order "to determine whether due process requirements apply." Board of Regents v. Roth, *id*. at 570–571, 92 S.Ct. at 2705–2706.

However, the constitutional issue tendered here need not be decided in light of the promulgation of the current Rules and Regulations of the Board. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346–348, 56 S.Ct. 466, 482–484, 80 L.Ed. 688 (1936) (Mr. Justice Brandeis, concurring opinion). In fact, the Board's present obligations under its own Rules and Regulations renders moot further constitutional inquiry on the issue.

## IV.

### RULING

First, the Court finds that the Board's current Rules and Regulations,

particularly Section VII., subsections H. and I., comports with acceptable and reasonable notification procedures and administrative regularity. (Text of above sections found *supra*) Under subsection I. the Board has obligated itself to give reasons for denial or deferral of parole. Further, subsection I. clearly states that such reasons "*shall* be maintained as an official record of the Parole Board." This, coupled with the additional fact that subsection I. requires that such reasons "be made promptly available to the inmate" envisions that written reasons for denial or deferral of parole are mandated under the Rules and Regulations of the Board. Notwithstanding any other policy to the contrary, the Board *must*, by the very terms and conditions of its own Rules and Regulations, give written reasons for denial or deferral of parole to the inmates concerned. The Court's interpretation of the obligations created under the Rules and Regulations is consistent with the clear and unambiguous language of the pertinent Rules and Regulations involved.

■ Secondly, a determination in favor of the above interpretation will not interfere with the discretion or expertise of the Board.[2]

Thirdly, the Court here is not dealing with the panoply of prisoners' rights. The Court is only concerned with an administrative practice of notifying an inmate of denial of parole and necessity of giving reasons therefore. In this regard, the Court takes notice that judicial, quasi-judicial and administrative bodies and agencies must give reasons for their decisions. This reasoning process is especially necessitated when a decision or ruling will substantially affect the lives, property or conduct of the person involved. As United States Dis-

trict Judge Marvin Frankel (S.D.N.Y.) succinctly stated:

"The duty to give an account of the decision is to promote thought by the decider, to compel him to cover the relevant points, to help him eschew irrelevancies—and, finally, to make him show that these necessities have been served." Criminal Sentences 40–41 (Hill and Wang, New York 1973).

Plaintiffs lay great stress in the recent case of Morrissey v. Brewer, *supra*. Although Morrissey dealt with the question of due process in relation to revocation of parole, Chief Justice Burger, speaking for the Court, did, at some length, "recall the function of parole in the correctional process." *Id.* at 408 U. S. 477, 92 S.Ct. at 2598. In this regard, the Chief Justice stated that:

"During the past 60 years, the practice of releasing prisoners on parole before the end of their sentences has become an integral part of the penological system. Note, Parole Revocation in the Federal System, 56 Geo.L. J. 705 (1968). Rather than being an *ad hoc* exercise of clemency, parole is an established variation on imprisonment of convicted criminals. Its purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed. It also serves to alleviate the costs to society of keeping an individual in prison. The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence . . . ." *Id.*

The Supreme Court in *Morrissey* did, however, note a difference between a person on parole and one waiting in anticipation for that conditional freedom.

---

2. Recently, the New Jersey Supreme Court in Beckworth v. Parole Board, 62 N.J. 348, 301 A.2d 727 (1973) clarified its holding in *Monks* and declared that *Monks* was not intended to and did not restrict the breadth of the Board's discretion in granting or denying parole. Concurring

Judge Sullivan stressed that judicial review of parole board matters is limited to the procedure afforded, and does not involve a review of the merits of the Board's decision, unless palpably arbitrary. We agree in that analysis of judicial review.

In citing Bey v. Connecticut Board of Parole, 443 F.2d 1079, 1086 (2nd Cir. 1971), the Court stated:

"It is not sophistic to attach greater importance to a person's justifiable reliance in maintaining his conditional freedom so long as he abides by the conditions of his release, than to his mere anticipation or hope of freedom." Morrissey v. Brewer, *supra*, 408 U.S. at 482n.8, 92 S.Ct. 2601.

In the recent decision of Gagnon v. Scarpelli, *supra*, the Supreme Court held, *inter alia*, that a probationer is entitled to the minimal due process protections as specified in *Morrissey* before revocation is effectuated. Once again the Court, through Mr. Justice Powell, emphasized the rehabilitative character of parole. Gagnon v. Scarpelli, *supra*, 13 Crim.L.Rptr. at 3083. Of significance to the matter at hand, Mr. Justice Powell noted that the minimum requirements set forth in *Morrissey, supra,* 408 U.S. at 489, 92 S.Ct. at 2604, "serve as substantial protection against ill-considered revocation. . . ." Gagnon v. Scarpelli, *supra*, 411 U.S. at 778, 93 S. Ct. at 1762. The Supreme Court showed obvious concern for the "informed use of discretion" in the decision making process.

"When the officer's view of the probationer's or parolee's conduct differs in this fundamental way from the latter's own view, due process requires that the difference be resolved before revocation becomes final. Both the probationer or parolee and the State have interests in the accurate finding of fact and the informed use of discretion, the probationer or parolee to insure that his liberty is not unjustifiably taken away and the State to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation or imprudently prejudicing the safety of the community." *Id*. 411 U.S. at 785, 93 S.Ct. at 1761.

Although the recent Supreme Court decisions previously discussed center upon the minimal due process to be afforded a person on parole or probation, they, nevertheless, support an enlightened concept of prisoner rehabilitation in all respects. Further, the cases support the constitutional principle of fundamental fairness in relation to any rehabilitation scheme, be it conditional freedom or a striving for that conditional freedom. In particular, due process in some form attaches when an administrative body has discretionary power over an individual's liberty. As the court said in Childs v. United States Board of Parole, Civil Action No. 1616–70 (D.D.C.1971):

"[I]t has never been held that the Parole Board, or for that matter any other government agency that makes such weighty determinations as that between an individual's incarceration and his relative freedom, may exercise its admittedly broad discretion in an arbitrary and capricious manner."

Contrary to defendants' position the Court finds that an inmate has a substantial interest in knowing the reason or reasons from the Board for denial of parole. The inmate's interest is not created in a vacuum but rather is interrelated to the interest of the State in giving such reasons. The Board has an interest in assuring itself and society that the inmate can be rehabilitated and that the inmate's conduct conforms to the standards established by the Board. An inmate has a right to know why his parole was denied so that, *inter alia,* he can attempt to correct his misdoings in a proper and successful manner. Further, the administrative processes must conform to some orderly and fair scheme, however informal. Morrissey v. Brewer, *supra*, 408 U.S. at 482, 92 S.Ct. 2593.

In this light, the Court cannot overlook the high rate of recidivism in the correctional process. This whole field cries out for fresh thinking and innovative techniques to rehabilitate and motivate those in custodial care in penal

**858**

institutions.[3]   An enlightened view of rehabilitation means, at the least, providing reasons for the denial of parole.

This enlightened view is amply demonstrated in Section VII., subsections H. and I. of the Board's current Rules and Regulations.   However, in order to effectuate that which the Board has promulgated it is clear to the Court that the Rules and Regulations of the Board require that written reasons be given for denial of parole.   To this end, the Court is satisfied that the Board will follow the tenor and spirit of their own Rules and Regulations consistent with the interpretation expressed in this Order.

■   Accordingly, the Court hereby dismisses plaintiffs' complaint in this action on the ground that the relief prayed for has been rendered moot by the promulgation of the Rules and Regulations of the Board.

---

3.   See two current treatises having excellent treatment of this field.   Killinger and Cromwell, Penology:   The Evolution of Corrections In America, West Publishing Co., 1973;  Krantz et al., Model Rules & Regulations on Prisoners' Rights and Responsibilities, West Publishing Co., 1973.