571 P.2d 731 (1977)
Barbara J. LOVETT, Plaintiff-Appellant,
v.
Omar D. BLAIR, Robert L. Crider, Theodore Hackworth, Katherine W. Schomp, Bernard Valdez, Virginia Rockwell, and Naomi Bradford, Individually and as members of the Board of Education of School District No. 1, in and for the City and County of Denver, and State of Colorado, Defendants-Appellees.
No. 76-196.
Colorado Court of Appeals, Div. I.
July 28, 1977.
Rehearing Denied September 1, 1977.
Certiorari Granted November 29, 1977.
*732 Hobbs & Waldbaum, P. C., Jeffrey I. Sandman, Denver, for plaintiff-appellant.
Henry, Cockrell, Quinn & Creighton, Benjamin L. Craig, Denver, for defendants-appellees.
SMITH, Judge.
Plaintiff, Barbara Lovett, was dismissed from her employment as a tenured teacher by the defendant Board of Education of School District No. 1 in Denver. She filed a petition for review in the district court. From that court's judgment dismissing her petition, she appeals. We reverse and remand with directions.
Mrs. Lovett was suspended by the Superintendent of Schools who brought charges against her in which he recommended that she be dismissed because of her incompetency as a teacher. Thereafter, at her request, a teacher tenure panel was constituted, and after lengthy hearings and deliberation, it issued its findings of fact which can be summarized by the last sentence contained therein"that the charge of incompetency of sufficient degree to warrant dismissal has not been proven." It then unanimously recommended that Mrs. Lovett be reinstated. The board received these findings and recommendation and announced that because the findings were so "sketchy and conclusory in nature," it could not make an evaluation of the proper course of action without first examining the transcript of the proceedings conducted by the panel. The board then issued its own findings, substituting them for those of the panel, and voted unanimously to dismiss Mrs. Lovett.
Mrs. Lovett's challenge to the above procedure requires us to define the precise relationship which the General Assembly intended to create between a teacher tenure panel and a school board in proceedings to adjudicate the rights of tenured teachers under the Teacher Employment, Dismissal, and Tenure Act of 1967. We hold that in substituting its own findings for those of the panel the board misapprehended its role and function as these were envisioned and intended by the General Assembly under the 1967 Act.
In construing the statute at issue, it is fundamental that we must ascertain and give effect, if possible, to the legislative intent underlying its passage. Cross v. Colorado State Board of Dental Examiners, Colo.App., 552 P.2d 38. If, in attempting to do so, we find that the particular statutory language is unclear and ambiguous, as it is here, we may then, in order to glean some *733 insight into the General Assembly's intent, look to the circumstances surrounding, and the history leading to, its passage. Lohf v. Casey, 330 F.Supp. 356.
Prior to 1949 the statute left to the local school board the decision of whether a tenured teacher was even entitled to a hearing prior to dismissal. Section 239, ch. 146, 1935 C.S.A. In that year, however, the General Assembly expanded the rights of tenured teachers by providing that any such teacher against whom charges had been brought was entitled, upon his request, to a hearing before the school board. Colo.Sess. Laws 1949, ch. 230. And the General Assembly manifested its continuing concern for the rights of tenured teachers when, in 1957, it enacted a statute which enabled all tenured teachers against whom proceedings had been commenced to have a hearing before a panel, one of whose members could be selected by the teacher. This panel, composed of 3 members, was empowered to hear the evidence and make findings of fact. Colo.Sess.Laws, ch. 233. We can only presume from this continuing pattern of statutory changes, resulting in a significant expansion of teacher rights, that the General Assembly intended to harness the school boards' previously unrestricted power of dismissal and to assure tenured teachers of greater protection of their rights than had previously been afforded. See Ridge Erection Co. v. Mountain States Tel. & Tel. Co., Colo.App., 549 P.2d 408.
This conclusion as to what purposes our General Assembly intended to accomplish by enacting these statutes is buttressed when we view what was happening in other areas of employee rights at the time of these enactments. See State Highway Commission v. Haase, Colo., 537 P.2d 300; People in the Interest of M.K.A., 182 Colo. 172, 511 P.2d 477. Civil service employees subject to disciplinary action were, as early as 1935, accorded the right to have written charges filed, to have the opportunity to be heard, and to seek judicial review. See § 4, ch. 36, C.S.A.1935. In 1957 the General Assembly enacted the Colorado Antidiscrimination Act with the stated purpose of protecting all employees from discriminatory and unfair employment practices. Colo. Sess.Laws 1957, ch. 176, p. 492; see State ex rel. Colorado Civil Rights Commission v. Adolph Coors Corp., 29 Colo.App. 240, 486 P.2d 43.
The courts also were moving in the direction of insuring that employees, particularly those with tenure in professional categories such as teachers, were not discharged except for good cause, impartially and fairly determined in accordance with the requirements of due process of law. In 1957 the right of a tenured teacher to continue in employment was held to be a constitutionally protected property right. Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692; see Note, 10 Vand.L.Rev. 139 (1957).
It was in this climate that the General Assembly enacted the Act of 1967. Its obvious purpose consistent with the emerging pattern was clear: to assure tenured teachers an impartial forum in which they could have an opportunity to defend themselves against charges alleging any of the statutory grounds for dismissal. See generally, Western Alfalfa Corp. v. Air Pollution Variance Board, 35 Colo.App. 207, 534 P.2d 796, aff'd, Colo. 553 P.2d 811; § 22-63-116, C.R. S.1973.
In furtherance of this purpose, the Act of 1967 provides that when a teacher's dismissal is sought by the chief executive officer of the district or by a member of the board, and if the board decides to accept the charges, the teacher is entitled to a hearing before a panel providing the teacher files a timely request therefor. Section 22-63-117(2)(3), C.R.S.1973. In this written request the teacher has the right to designate one member of the hearing panel. Such member shall, together with a member selected by the board, choose the third and final member. Section 22-63-117(5), C.R.S. 1973. At the hearing, which is thereafter held, the teacher is afforded the right to appear with counsel; to present all evidence bearing upon the reasons for her dismissal and all school district records pertaining to her work; to cross-examine witnesses; *734 § 22-63-117(7), C.R.S.1973, and to have a complete record and transcript made of all evidence adduced before the panel. Section 22-63-117(8), C.R.S.1973. After the panel reviews the evidence, it is required to make written findings of fact and based thereon to recommend to the board that the teacher be either dismissed or retained. Section 22-63-117(8), C.R.S.1973. The board's authority is limited to three possible alternatives: to dismiss, retain, or place the teacher on a one-year probation. Section 22-63-117(10), C.R.S.1973.
Because the statute is so explicit in enunciating the rights of tenured teachers, and because it specifically requires that, based upon the transcript and record of all the evidence, the panel make written findings of fact to be submitted to the board for review. We conclude that the General Assembly thereby intended that if there is evidence to support the panel's findings, then the board of education is bound by those findings and is not free to adopt different findings in order to discharge the teacher.
For the board to have the power to make its own findings of fact based upon its own review of the record and to thereby discard the panel's findings would be to vitiate the obvious purpose of the Act. If such were the case, the discretionary power of the board would be absolute, the panel's proceedings meaningless, and the tenured teacher would have no greater rights than were accorded a teacher prior to 1957. See Johnson v. Heggie, 362 F.Supp. 851. Indeed, by directing that a Teacher Tenure Panel, constituted in the same manner as an arbitration panel, make the findings of fact upon which dismissal must be based, the General Assembly has recognized that the board itself is not an impartial tribunal, and that its position is that of an adversary.
In summary, we hold that the Teacher Tenure Panel is essentially an independent administrative agency charged with the responsibility of finding ultimate facts. It is not merely an "evidence gathering" arm of the school board. Its duties under the statute are prescribed as, and are limited to, a determination of whether any, or all, of the statutory grounds for dismissal of "tenured teachers" exist. To that end it is granted substantially the same powers and has the same due process responsibilities as other administrative fact finding agencies. Section 22-63-117(5) and (6), C.R.S.1973. And, it being an independent agency, we hold that the determination of a Teacher Tenure Panel is subject to judicial review, either at the instance of the teacher after the board has acted, or of the school board.
The fact that the Teacher Tenure Panel has the additional responsibility of making a dispositional recommendation to the school board does not alter or affect its independence or the finality of its decision. It may recommend retention even though it has found the statutory grounds for dismissal have been proven. The school board's role is that of the governing body of the district, and it is charged with the responsibility for the orderly administration of school affairs within the school district. Section 22-32-103, 109, 110, C.R.S.1973. It has the sole power to determine what disposition should be made if a finding has been made that grounds exist entitling the board to dismiss the teacher under the statute. See § 22-63-116, C.R.S.1973.
As to this dispositional decision the board's discretion remains supreme. See § 22-32-109, 110, C.R.S.1973. As the governing and policy formulating body of the school district, it may retain the teacher, it may discharge the teacher, or it may place the teacher on a one year probation status. Section 22-63-117(10), C.R.S.1973. On the other hand, it must retain the teacher if the panel finds that the statutory criteria for discharge have not been met.
We recognize that Dugan v. Bollman, 31 Colo.App. 261, 502 P.2d 1131, stands in part for an entirely different view of the boardpanel relationship, than we have enunciated here, and to the extent that this holding is inconsistent therewith, we hereby overrule that case.
*735 In the instant case the board reached its own findings of fact and acted thereon after determining that the panel's findings were conclusory in nature. Such is not the board's role or function as we have said. When the board, after examining the record and the findings, reached the conclusion that the panel's findings were inadequate, the board should have remanded the cause back to the panel for more specific findings of fact, or in the alternative sought judicial review.
We have also examined the findings of the panel, and disagree with the board's conclusion that the findings were inadequate because they were conclusory. We hold that the conclusion as to the degree of incompetence necessary for dismissal is part and parcel of the panel's determination as to whether grounds for dismissal have in fact been proven. However, we agree with the board that there are insufficient findings to support the panel's finding as to the ultimate fact.
Accordingly, we reverse the district court's judgment dismissing Mrs. Lovett's petition for review with directions to remand to the school board for further remand to the panel for more detailed and specific findings of fact.
SILVERSTEIN, C. J., concurs.
COYTE, J., dissents.
COYTE, Judge, dissenting:
I dissent.
The majority concludes that the legislature's purpose in enacting the Teacher Tenure Act, § 22-63-101 et seq., C.R.S.1973, in its present form was to "harness the school board's previously unbridled power of dismissal" and therefore that a school board is bound by the panel's recommendation if it is supported by the evidence. This result is contrary to established administrative procedures, the obvious legislative intent underlying § 22-63-117, C.R.S.1973, and sound principles of judicial review.

I
The respective functions of school boards and panels in teacher dismissal cases are clearly delineated by § 22-63-117, C.R.S. 1973. The panel is empowered to receive evidence in connection with charges against the teacher, § 22-63-117(6), C.R.S.1973, and is to review the evidence and recommend only that the teacher be dismissed or retained. Section 22-63-117(8), C.R.S.1973. The board must independently evaluate the findings of the panel, School District No. 50 v. Witthaus, 30 Colo.App. 41, 490 P.2d 315 (1971), and ultimate authority as to disposition of the charges is reserved to the school board rather than the panel. Nordstrom v. Hansford, 164 Colo. 398, 435 P.2d 397 (1968); cf. University of Colorado v. Silverman, Colo., 555 P.2d 1155 (1976). Judicial review of the board's decision is limited in scope. See §§ 22-63-117(11) and 24-4-106(7), C.R.S.1973. These provisions, specifically including the circumscribed role of the panel in dismissal proceedings, have been found to comport with relevant standards of due process. Umberfield v. School District No. 11, 185 Colo. 165, 522 P.2d 730 (1974).
Here, the panel did not specifically find that charges of plaintiff's incompetency had not been proved. Rather, the panel concluded that the evidence would not sustain charges of ineffective teaching of reading and mathematics, but that it would sustain charges of failing to maintain discipline in the classroom and of inadequate and ineffective classroom management practices. The panel then, in an obvious attempt to substitute its own discretion for that of the school board, stated as its general opinion "that the charge of incompetency of sufficient degree to warrant dismissal has not been proven."
Given the contradictory and palpably inadequate findings of the panel, I conclude that the board was fully justified in refusing to accept the recommendation grounded on these findings. Accordingly, the only relevant question in this case is reached: to what procedural standards can a school board be reasonably held when *736 rejecting the findings and recommendations of a panel and reaching an independent decision?
Members of a school board are elected officials, and, as such, are subject in the first instance to public opinion. They are directly responsible to the electorate for the operation of the institutions under their governance and are afforded broad powers in accomplishing their duties. See, e. g., §§ 22-32-109 and 110, C.R.S.1973. Consequently, while there may be a discernible legislative solicitude for the rights of tenured teachers dismissed from their employment, there is a more obvious and much more compelling legislative policy requiring that the functioning of school boards not be unduly impeded by unwarranted judicial interference in that process. The majority has, I believe, amended the mandate of the legislature and injected confusion and uncertainty into our educational system by elevating the fact finding panel to a position of authority equal to that of the board.
In my opinion, Dugan v. Bollman, 31 Colo.App. 261, 502 P.2d 1131 (1972) and School District No. 50 v. Witthaus, supra, were correctly decided. They hold that the sole function of a panel is to gather and review the evidence in a dismissal proceeding and to enter findings and a recommendation. The board thereafter must make an independent evaluation of the findings in order to reach a decision as to retention or dismissal, which decision rests exclusively with the board.
Here, the record reveals that the Board rejected the panel's findings on the basis of their "sketchy and conclusory" nature and determined to make its own examination of the evidence. The board members agreed to inform themselves of the pertinent facts, and, at a subsequent board meeting, each member stated that he or she had reviewed the record in sufficient depth to render a decision in the matter. After its own review of the proceedings and the hearing of additional testimony on the specific question of whether the board had in fact examined the record, the district court found there was "no evidence" that the board had failed to consider adequately the evidence presented to the panel. Accordingly, the principles of Dugan and School District No. 50 should be dispositive of this litigation. To hold otherwise, as the majority does, affords the panel a greater degree of discretion than that possessed by the board, renders electoral control over teacher tenure and dismissal meaningless, and subjects teachers to the authority of a body whose actions cannot be effectively reviewed at any level.
Further, I view the other authority relied on by the majority to be either unpersuasive or irrelevant. Quite simply, those statutes and cases reflecting "what was happening in other areas of employee rights" at the time § 22-63-101 et seq., C.R.S.1973, was enacted have no bearing whatsoever on the issue before us of the relationship between a school board and the statutorily constituted panel.
With regard to the purported expansion of teachers' rights effected by the United States Supreme Court, the majority misapprehends the distinction between procedural due process safeguards and claims predicated on other constitutional rights. As a matter of procedural due process, a discharged teacher is entitled to a hearing only if he demonstrates that he possessed a property or liberty interest which was infringed by the discharge. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). In the context of our educational system, such protections are not merely to provide some degree of job security for teachers, for they must be extended to students as well. Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); see generally, Hogler, Collective Bargaining in Education and the Student, 27 Labor Law Journal 712 (1976). Accordingly, the majority's reliance on Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed.2d 692 (1957), which involved the infringement of a separate constitutional right, is misplaced. And, in any event, the plaintiff here was afforded a hearing prior to discharge, which *737 is the extent of her constitutionally protected right to employment.
Finally, the majority holds that the panel's determination must be adopted by the board when supported by the evidence. Even utilizing that test, the result reached by the majority cannot be sustained.

II
The record in this case consists of an 8-volume transcript of testimony presented before the panel together with various exhibits. The exhibits include such items as inter-departmental memoranda, reports of teachers substituting in plaintiff's class, lesson plans, a diagnostic analysis of "team learning," and administrative correspondence regarding dismissal procedures. As above, the members of the board stated, and the district court so found, that he or she had reviewed the record in sufficient detail to reach an informed and independent decision with respect to plaintiff's competency as a teacher.
The testimony in the case can be generally described as follows. The board produced five witnesses who testified unfavorably with regard to plaintiff's abilities. These witnesses were extensively cross-examined, but, in my opinion, neither their qualifications nor their credibility was seriously challenged. Plaintiff was the only witness testifying in her behalf.
Albert Rehmer, the then principal of the school where plaintiff taught, and himself a teacher and administrator for 26 years, recounted over the course of some 228 transcribed pages of direct examination, specific instances in which plaintiff failed to maintain classroom discipline, to utilize classroom time effectively, and to respond to suggestions for improvement of her teaching. Direct examination was concluded with this exchange:
"Q (By Mr. Eggleston) Mr. Rehmer, do you have an opinion concerning whether Mrs. Lovett effectively had adequately taught the subject of mathematics during the period of September 1972 to March of 1973?
A Yes, sir.
Q What is that opinion?
A That her teaching was not effective or adequate in the area of mathematics.
Q Do you have an opinion concerning whether Mrs. Lovett's teaching of reading to her students during that same period of time was effective and adequate?
A In the area of reading Mrs. Lovett, here again, was ineffective and inadequate.
Q Mr. Rehmer, do you have an opinion concerning whether Mrs. Lovett effectively and adequately maintained discipline in her classroom during that same period September 1972 to March 1973?
A Yes.
Q What is your opinion?
A Here again, Mrs. Lovett was ineffective and inadequate in the area of discipline.
Q Do you have an opinion concerning whether Mrs. Lovett effectively and adequately employed classroom management practices during that period?
A Yes, I do.
Q What is that opinion?
A Mrs. Lovett, here again, was ineffective and inadequate in her techniques of classroom management.
Q Do you have an opinion concerning whether, again during that period of time, September 1972, to March 1973, Mrs. Lovett utilized or followed the recommendations made to her by you and the others whom you have mentioned, such as Mrs. Jacoby, Mrs. McCue and Miss Oursler?
A Yes.
Q Did she?
A She did not.
Q Mr. Rehmer, can you define for us a competent teacher? What you believe is a competent teacher?
A A competent teacher is one who provides a classroom atmosphere where children can succeed; where their *738 accomplishments are recognized and where all necessary assistance is given.
Q Do you have an opinion concerning whether or not Mrs. Lovett is a competent teacher?
A Mrs. Lovett is not a competent teacher."
I am persuaded that Principal Rehmer's testimony alone was a sufficient predicate for the board's order of dismissal. Yet his testimony is less than one-third of the testimony adduced by the board in proving its case.
The remaining board witnesses to testify at the hearing were Sue Jean Oursler, an elementary school teacher having B.A. and M.A. degrees and more than 25 years of teaching experience; Margaret Jacoby, a public school coordinator also holding B.A. and M.A. degrees and having more than 20 years of teaching experience in elementary schools; Katherine McCue, supervisor of early childhood primary grades in the Denver Public School system, who had been employed as a teacher or school administrator for over 40 years at the time of the hearing and who also holds B.A. and M.A. degrees; and Donald Hauptli, who had taught at plaintiff's former school for 17 years. Each of these witnesses described specific instances of plaintiff's alleged incompetency, and each stated that in his or her opinion, plaintiff was incompetent as a teacher.
The record here indicates to me that the board performed its duties responsibly, with strict observance not only of plaintiff's rights, but the rights of the public as well. Sound principles of judicial review insure that teachers are not arbitrarily dismissed from their employment. There would appear to be little justification for imposing on school board members the unrealistic standards adopted by the majority.
I would affirm the judgment.