Sharon City School District, Petitioner *v.* Jack Hudson, Respondent.

Argued February 1, 1978, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, Blatt and DiSalle.

*William G. McConnell*, with him *Cusick, Madden, Joyce and McKay*, for petitioner.

*John R. DeAngelis*, for respondent.

*William Fearen*, with him *Michael I. Levin*, and *Cleckner & Fearen*, for amicus curiae, Pennsylvania School Boards Association.

Opinion by Judge Wilkinson, Jr., March 14, 1978: This is an appeal from an order of the Secretary of Education (Secretary) which reversed a decision of the petitioner school district demoting the respondent,

and which further directed that the respondent be reinstated with back pay until such time as the petitioner held a hearing consistent with the Secretary's opinion. We reverse.

Respondent was an assistant principal at petitioner's junior high school for the 1973-1974 and 1974-1975 school years. Due to various considerations, particularly a large decline in enrollment, the budget adopted on June 30, 1975 eliminated the respondent's position. The respondent was informally advised of this action on or about July 2, 1975, and on July 5, 1975 he requested a private meeting with the school board and the superintendent. This meeting was held on July 9, 1975 and subsequently on July 28, 1975 the respondent was formally advised that the position of assistant principal at the junior high school had been eliminated, and that beginning with the 1975-1976 school year he would be transferred to a teaching position at the maximum basic salary for teachers. On August 4, 1975 the respondent requested a hearing. After a number of continuances requested and agreed to by both sides, the hearing was held on March 29, 1976. The school board affirmed the decision to demote, but on appeal was reversed by the Secretary. The Secretary found that the respondent had been denied due process for these reasons: (1) the school board's solicitor, Mr. McConnell, had functioned both as prosecutor and judge; (2) the petitioner should have afforded respondent a hearing prior to his demotion; (3) two school board members had misconceptions regarding their ability to reinstate the respondent once the budget had been closed. The Secretary then ordered that the respondent be reinstated with back pay pending a new hearing.

Before entering into a detailed discussion of this particular case, it is necessary to first establish the basic rules of law which govern this appeal. Under

Section 1151 of the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §11-1151, a professional employe subjected to a non-consensual demotion shall be entitled to a hearing before the board of school directors, and thereafter to an appeal in the same manner as provided for dismissed professional employes in Section 1127 of the Code, 24 P.S. §11-1127. This hearing must afford the professional employee with due process of law. *In re: Appeal of Feldman*, 21 Pa. Commonwealth Ct. 451, 346 A.2d 895 (1975). Due process, in the administrative setting, requires that governmental bodies avoid not just actual bias, but also the "appearance of possible prejudice." *Id.* at 453, 346 A.2d at 896, *quoting, Horn v. Township of Hilltown*, 461 Pa. 745, 748, 337 A. 2d 858, 860 (1975).

In a number of cases, this Court, as well as our Supreme Court, has held administrative action invalid for failure to afford a contestant due process. In *Horn, supra,* the attorney representing the township in a zoning matter also represented the Zoning Hearing Board. This attorney conducted the meeting, ruled on evidence presented by the contestants, and also ruled on objections made to the evidence which he presented. Thereafter, in his function as solicitor for the Zoning Hearing Board he advised it on legal matters concerning the case. Our Supreme Court ruled that even absent a showing of actual harm this procedure constituted a denial of due process.

*In re: Appeal of Feldman, supra,* involved a situation where the school district's solicitor tried a case in support of a temporary professional employee's dismissal, and also either prepared or assisted in the preparation of the school board's adjudication of dismissal. We ruled that such conduct on the part of the solicitor denied the employee due process. In *Department of Education v. Oxford Area School District,*

24 Pa. Commonwealth Ct. 421, 356 A.2d 857 (1976), we held that a teacher was denied due process when the superintendent of schools testified against the teacher at the hearing and then attended the meeting at which the school board reached its decision. At that meeting the superintendent responded to a number of questions concerning the teacher's effectiveness, her future job opportunity, and so forth. That case did not involve a commingling of prosecutorial and judicial functions, but it did have the added element of the giving of unrecorded testimony. Finally, in *English v. North East Board of Education*, 22 Pa. Commonwealth Ct. 240, 348 A.2d 494 (1975), this Court held that a temporary professional employee was denied due process when at the hearing the school board's solicitor not only presided and made several evidentiary rulings, but also presented testimony and cross-examined the employee and her witness.

*Pennsylvania Human Relations Commission v. Feeser,* 469 Pa. 173, 364 A.2d 1324 (1976), *vacating,* 20 Pa. Commonwealth Ct. 406, 341 A.2d 584 (1975) stands in contrast to the line of cases discussed above and is more recent than any of them. There, the Supreme Court found no denial of due process when the Pennsylvania Human Relations Commission's (PHRC) general counsel represented the complainant before the PHRC's hearing panel. The court found no support for the contention that the PHRC's general counsel had rendered legal advice to the panel in the course of the hearing. Rather, all the record revealed was that the counsel acted as attorney for the complainants by arguing the merits of several motions pending before the panel, who then made the appropriate rulings. We believe that a close examination of the record in this case places it within the scope of the *Feeser* decision, and does not support the Secretary's finding that the respondent was denied due process.

At the beginning of the hearing under consideration, the petitioner's solicitor and counsel for respondent discussed the function petitioner's solicitor had played and would play in the proceeding. Petitioner's solicitor made it quite clear he had played no part in the decision to eliminate the position or to demote respondent. He further made it clear he would give advice to the Board and would not act as "prosecutor," nor would he examine or cross-examine witnesses.

Dr. Artac, the superintendent, presented the school district's case in support of demotion by taking the stand and testifying in monologue form. This procedure was objected to by the respondent's counsel. The petitioner's solicitor stated: "We'll overrule your objection and suggest you make timely objections to any statement that we make that you wish to have excluded because you feel it's improper and prejudicial to your client." Dr. Artac was recalled to the stand one other time during the hearing. The petitioner's solicitor declined to cross-examine any of the witnesses, and made no objections to any of the testimony presented. There is no evidence that he participated at the meeting when the school board voted unanimously to affirm the demotion.

In addition to Dr. Artac's presentation, and the solicitor's comments on respondent's objection to it, there are several other incidents in the record that warrant examination. First, the respondent's counsel sought to question one of the Board members concerning his past experience regarding the opening of the budget once it had been submitted and closed. The solicitor questioned whether this required a legal conclusion on the part of the board member. Respondent's counsel then asked the solicitor if he was objecting, and the solicitor stated he was not objecting, but only trying to clarify the question asked the wit-

ness. The witness was then allowed to answer the question. Second, the solicitor on two occasions during the examination of respondent by his counsel sought clarification concerning the testimony being given. One interruption related to whether it was necessary to inquire into the rating given the respondent on each of his enumerated job responsibilities. When told by respondent's counsel that it was necessary to pursue this line of inquiry, the solicitor did not raise any further questions. The other interruption sought only to clarify to whom the respondent was referring when in the course of his testimony he referred to the plural "we" rather than the singular "I."

We find nothing in the events outlined above which indicates that the respondent was denied due process. To the contrary, we believe the record clearly demonstrates that the solicitor for the petitioner carefully avoided active participation in the questioning of witnesses and made no formal objections to any of the questions asked by respondent's counsel, but only sought clarification on certain matters. We see no prejudice in the solicitor's denial of the objection raised by respondent's counsel to Dr. Artac's form of testimony, and do not believe that the monologue presentation raised any possibility of prejudice to the respondent. We must, therefore, disagree with the Secretary's statement that "Mr. McConnell had placed himself in role of prosecutor and judge. He simultaneously objected to the admissibility of evidence and ordered the evidence to be inadmissible," as well the Secretary's conclusion that the "monologue presented inadequate opportunity for timely objection by appellant's counsel and this provided the decision-making body with possible erroneous or inadmissible evidence."

In his decision, the Secretary also relied on two other factors in finding a denial of due process. The first was the fact that the solicitor assisted Dr. Artac in preparing the letter that informed the respondent of his demotion. We fail to see how this action raises the possibility of prejudice, particularly when all the letter did was inform the respondent of his demotion and of his right to a hearing. As was stated in *Department of Education v. Oxford Area School District, supra* at 426-27, 356 A.2d at 861:

We emphasize that it is the Superintendent's role as an adverse witness that is crucial to this case; the fact that he initially investigated the shoplifting incident and recommended a hearing is not, in our view, sufficient to indicate any bias that would render his participation in the adjudicatory phase objectionable.

· The second factor relied on by the Secretary was the fact that the two school board members questioned at the hearing of the nine member school board panel misunderstood the law regarding their ability to open the budget once it had been closed. Our examination of the record shows that these two witnesses were indeed confused concerning their ability to reopen the budget, but were basically just relating their past experiences in this respect. In any event, we fail to see how this fact raises a possibility of prejudice so great as to amount to a denial of due process. In addition, Mr. Colt, another member of the school board, made it clear through the questions he asked one of these two witnesses that the school board had indeed reopened the budget and transferred funds.

With respect to the need for a hearing prior to demotion the recent case of *Black v. Wyalusing Area School District*, 27 Pa. Commonwealth Ct. 176, 365 A. 2d 1352 (1976), sets forth the law on this point. That case holds that while the *abolition* of a position is ef-

fective without the necessity of a hearing, the *demotion* which accompanies the abolition does require a hearing. Here, the respondent was afforded a hearing in the normal course of events, which resulted in his demotion being sustained by the school board. Since this hearing was held, and since we have found no denial of due process at the hearing, there is no error in this regard. We would point out that the result in the *Black* case, *supra*, differs substantially from the final result in this case because there the school board refused to give the employee a hearing. As a result, in the *Black* case we ordered that under the unusual circumstances that existed the professional employee should be reinstated with back pay until such time as a hearing could in fact be held.

Although respondent included in his appeal to the Secretary, as paragraph 7, an allegation that "said demotion of salary and type was arbitrary, capricious and violative of the School Code of 1949, as amended," he did not offer any evidence in this record to support such a charge.

For the demotion to be overturned on other than procedural grounds, the employee has the burden of proving the action to be arbitrary, discriminatory or founded upon improper considerations. *Lucostic v. Brownsville Area School District*, 6 Pa. Commonwealth Ct. 587, 297 A.2d 516 (1972). The respondent in this case has clearly not carried this burden. The record demonstrates that: (1) there has been a large decline in the student population at the junior high school in recent years; (2) the junior high school has gone on half-day sessions; (3) the school district lost about $400,000 in state reimbursement since 1970 due to the declining student population; (4) the school district has lost substantial taxable property due to an urban renewal project in downtown Sharon; (5) the school district has eliminated other positions in addi-

tion to that occupied by the respondent, including the assistant principal at the senior high school and a nurse. This evidence demonstrates that the school district acted properly in demoting the respondent, and, therefore, we shall not disturb that decision.

Accordingly, we will enter the following

ORDER

AND Now, March 14, 1978, the decision of the Secretary of Education, No. 297, dated December 27, 1976, is reversed. It is ordered that the decision of the Sharon City School Board demoting the respondent Jack Hudson from an assistant principal at the junior high school to the position of teacher at the maximum basic salary for teachers be, and the same is hereby, affirmed.