John F. DeKOEVEND, Petitioner,

v.

BOARD OF EDUCATION OF WEST END SCHOOL DISTRICT RE-2, Kay Crane, Bill Gabriel, Ben Kilgore, Sam Puderbaugh, and Lowell Watson, as members of the Board of Education of West End School District RE-2, Montrose County, State of Colorado, Respondents.

No. 80CA0150.

Colorado Court of Appeals, Div. II.

July 1, 1982.

Rehearing Denied July 22, 1982.

Certiorari Granted Nov. 8, 1982.

Dennis E. Valentine, Denver, for petitioner.

Miller & Swearingen, Reese Miller, Richard B. Wagner, Denver, for respondents.

KELLY, Judge.

John DeKoevend was dismissed from his tenured teacher position pursuant to §§ 22–63–116 and 22–63–117, C.R.S.1973, and seeks review of that dismissal in this court pursuant to § 22–63–117(11), C.R.S.1973 (1981 Cum.Supp.). We affirm.

Petitioner was a tenured teacher of fifth and sixth grades at West End School District RE–2 in Montrose County. The superintendent of the District recommended the dismissal of petitioner on August 14, 1979. The charges against DeKoevend included improper physical contact with students, use of improper language toward students, use of improper teaching techniques, failure to maintain proper classroom discipline, and failure to conform to administrative directives.

A hearing was held pursuant to § 22–63–117, C.R.S.1973 (1981 Cum.Supp.). The hearing officer found that, although DeKoevend's physical contact with the students was not sexually provocative, his failure to maintain classroom discipline and to conform to administrative directives constituted neglect of duty and insubordination

sufficient to justify dismissal. Respondents, acting as members of the Board of Education (the Board), considered the hearing officer's findings and recommendations in December 1979, and decided to dismiss DeKoevend.

DeKoevend alleges that the hearing officer's findings were insufficiently specific to form a basis for the Board's decision, that there is insufficient evidence to sustain the hearing officer's findings, that his dismissal cannot be based in part upon incidents prior to the school year during which he was dismissed, that the school principal had no authority to set school policy, and that the attendance of the principal and superintendent at the Board's executive session was improper.

## I.

■ In *Ricci v. Davis,* Colo., 627 P.2d 1111 (1981), the Supreme Court provided guidance concerning the degree of specificity required in the findings of the hearing officer (formerly a three-member panel). In that case, the panel's findings supplied little more than the "irreducible minimum of factual detail needed to enable 'the board, and a court on judicial review, [to] fairly and reasonably determine whether the facts justify dismissal on the charged statutory grounds.' *Blair v. Lovett,* [196 Colo. 118, 582 P.2d 668 (1978)]." *Ricci, supra,* 627 P.2d at 1120, fn. 9. After comparing the findings in *Ricci* with the findings in the instant case, we conclude that they contain sufficient detail to support the Board's action. In addition, our review of the record reveals sufficient evidence to sustain the hearing officer's findings.

## II.

■ DeKoevend's contention that his dismissal cannot be based in part upon incidents in past school years is without merit. "Rather than being irrelevant, a history of prior disciplinary measures has probative value in deciding whether dismissal for cause is warranted." *Robertson v. Board of Education,* 39 Colo.App. 462, 570 P.2d 19 (1977). Prior warnings and failure to con-

form thereto may properly be considered by the Board as evidence of incompetency, insubordination, or other statutory grounds for dismissal found in § 22–63–116, C.R.S. 1973.

## III.

■ DeKoevend asserts that the principal lacked the authority to adopt policies, rules, and regulations to implement school policy. We disagree.

The duties of a principal are set forth in § 22–32–126, C.R.S.1973. The statute provides that the principal shall supervise the operation and management of the school, assume administrative responsibilities and instructional leadership for the planning, management, operation, and evaluation of the educational program, and perform such other duties as may be assigned by the superintendent. These administrative responsibilities could not be carried out if the principal was unable to promulgate rules and enforce them.

DeKoevend's reliance on *Nordstrom v. Hansford,* 164 Colo. 398, 435 P.2d 397 (1967), is misplaced. In that case, a booklet signed by the superintendent contained a rule permitting "reasonable corporal punishment." In reversing the dismissal of a teacher who had "manhandled" a student only once, the court noted that the evidence did not establish whether "the matters and things contained in the booklet were regularly enacted as rules by the school board." The authority of the school board to promulgate such rules was not questioned. Here, the principal had the authority to promulgate rules.

## IV.

DeKoevend finally argues that the attendance of the principal and the superintendent at the executive session of the Board was improper. Although § 22–32–108, C.R.S.1973, permits the Board to invite non-members to its executive sessions, this section is limited by *Weissman v. Board of Education,* 190 Colo. 414, 425, 547 P.2d 1267, 1276 (1976). In *Weissman,* the Board's at-

torney, who had prosecuted the dismissal action, was included in the executive session of the Board. The Supreme Court held that, in the future, the Board's attorney "should not be present during the Board's deliberations . . . in order to avoid any appearance of impropriety or unfairness."

Since the decision of the Board must be based solely on the fact-findings of the hearing officer, *Ricci, supra,* the Board could not properly question the principal or the superintendent concerning hearing testimony or other facts outside the record. *Cordova v. Lara,* 42 Colo.App. 483, 600 P.2d 105 (1979). However, here, as in *Weissman,* there was substantial evidence supporting the Board's decision, neither the principal nor the superintendent cast a vote, and no substantial prejudice was shown. Accordingly, we follow the *Weissman* rule and decline to reverse.

The order of dismissal is affirmed.

VAN CISE, J., concurs.

BERMAN, J., dissents.

BERMAN, Judge, dissenting.

I respectfully dissent.

The due process rights of this teacher were violated when the Board "retired in private to deliberate regarding his employment" accompanied by the principal and superintendent who had testified as adverse witnesses against the teacher during the evidentiary hearing. *See Weissman v. Board of Education, infra; Commonwealth Department of Education v. Oxford Area School District,* 24 Pa.Cmwlth. 421, 356 A.2d 857 (1976). Immediately following the closed meeting ("executive session") the Board returned to the public meeting and voted for dismissal of the teacher without any further discussion.

"The essence of procedural due process is fundamental fairness." *Mountain States Telephone & Telegraph Co. v. Department of Labor & Employment,* 184 Colo. 334, 520 P.2d 586 (1974). It serves the dual purpose of conveying to the individual the feeling that he has been treated fairly, as well as

minimizing the risk of a mistake in deprivation of a property interest. *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed. 252 (1978).

In *Gonzales v. McEuen,* 435 F.Supp. 460 (C.D.Cal.1973), the court held that high school students had been deprived of due process of law when the superintendent, who by statute was chief adviser of the Board, sat with the Board during its deliberations on the issue of the expulsion of the students. The court noted that the superintendent was also "the chief of the 'prosecution' team, to wit, the District." The court based its conclusion on the following analysis:

"Defendants' counsel maintain that Mr. McEuen [superintendent] did not participate in the deliberations and did no more, perhaps, than serve cookies and coffee to the Board members. Whether he did or did not participate, his presence to some extent might operate as an inhibiting restraint upon the freedom of action and expression of the Board. Defendants argue that there is no evidence that Mr. McEuen influenced or biased the Board. Proof of subjective reasoning processes are incapable of corroboration or disproval. Plaintiffs should not be forced to rely upon the memory or sense of fairness of Superintendent McEuen or the Board as to what occurred there. Perhaps Mr. McEuen's physical presence in deliberation becomes more offensive because of the pre-hearing comments which showed something less than impartiality. [footnote omitted].

The court concludes that the process utilized by the Board was fundamentally unfair. This raises a presumption of bias. In view of the alternatives for the selection of an impartial hearing body it would have been more reasonable to provide procedures that insured not only that justice was done, but also that it appeared to have been done."

This analysis is consistent with *Weissman v. Board of Education,* 190 Colo. 414, 547 P.2d 1267 (1976), in which the Supreme Court stated: "Courts which have considered the problem have suggested that a

school board's attorney, who has taken part in the adversary proceedings in the role of prosecutor, should not be present during the board's deliberations.... We agree. In the future counsel who has played such a role in the proceedings should take no part in the final deliberations of the board, *in order to avoid any appearance of impropriety or unfairness."* (emphasis added). *See also Sharon City School District v. Hudson,* 34 Pa.Cmwlth. 278, 383 A.2d 249 (1978); *White v. Board of Education,* 54 Hawaii 10, 501 P.2d 358 (1972).

It is important to note that *Weissman* stated a definitive prospective rule for teacher's dismissal proceedings which is applicable here. *Weissman* did not apply the rule in the case before it because of the substantial evidence in that record. However, it did not, in noting that the attorney in *Weissman* did not vote, set up an exception to the rule.[1] In essence, *Weissman* held that under the circumstances there presented, the attendance of the attorney was harmless error. We can not and should not excuse violations of the rule in *Weissman,* especially here where *Weissman* had been in existence for almost four years prior to the hearing by the Board. To do so is to nullify *Weissman* and the due process safeguards it compels.

In his report, the hearing officer stated that it was his feeling that the charges would not have been brought had not the school administration thought that the physical contact with the female students was sexually provocative or exploitive and this was not so. He also stated, had he the authority, he would recommend a one year probation, a sanction which the Board had the authority to impose but which he recognized that he did not have. Section 26–63–117(10), C.R.S.1973 (1980 Cum.Supp.). However, not having that authority and finding the neglect and insubordination by the teacher's failure to heed changes in his behavior recommended by the Board, he recommended that the teacher be dismissed.

The purpose behind the Teacher Employment Dismissal and Tenure Act is to limit, in a significant way, "the school board's previously unrestricted power of dismissal, and to ensure that tenured teachers '[are] not discharged except for good cause, impartially and fairly determined in accordance with the requirements of due process of law.'" *Lovett v. Blair,* 39 Colo.App. 512, 571 P.2d 731 (1977), *aff'd,* 196 Colo. 118, 582 P.2d 668 (1978). Based on the record before us, I cannot conclude that the dismissal of the teacher here met these basic requisites.

The denial of due process of law does not stem from the fact that the superintendent preferred the original charges against the teacher but from the fact the superintendent and principal testified as adverse witnesses in the evidentiary hearing before the hearing officer. *Commonwealth Department of Education v. Oxford Area School District, supra.*

In the absence of any explanation by the Board as to the purpose of the superintendent and principal attending the deliberations, I cannot attribute an innocent interpretation. Both the superintendent and principal had already testified adversely against the teacher. I cannot perceive their presence before the Board as anything other than a furtherance of that previous testimony, neither announced nor commented upon by the Board. We have previously held that in an administrative setting, the body involved in the decisional process, here the Board, does not have authority to receive *ex parte* communications, even without any showing that the improper communication biased it. *Zuviceh v. Industrial Commission,* 37 Colo.App. 249, 544 P.2d 641 (1975).

Under the circumstances here, a remand to the Board for a fair and impartial decision would be futile. *See generally A. Jaffee, Judicial Control of Administrative Action* at 589. I perceive of no circumstances

---

1. The record here is devoid of any explanation as to the presence of the principal and the superintendent at the executive session or whether they participated in the closed session. The only basis for the majority's conclusion that the superintendent and principal did not vote is that they were not listed on the roll call in the Dismissal Order and Board Resolution, and, presumptively, because dismissal, by statute, is a power reserved to the Board.

under which the same Board would be purged of its taint of partiality which resulted in the decision that did not meet the basic requisites of due process of law and which was based upon insubstantial factual evidence. Here, where "the decision makers are laymen who (unlike a judge) have not been trained in professional commitment to an exacting, detached and disinterested appraisal of the evidence there is the obvious danger that they will not be fair and impartial. This danger is compounded when officials have previously adjudicated the charges." *Rosario v. Amalgamated Ladies Garment Union,* 605 F.2d 1228 (2d Cir. 1979), *cert. denied* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980) (construing due process standards for labor union tribunal governed by the Labor Management Reporting and Disclosure Act).

Since the due process rights of the teacher were violated when the principal and the superintendent attended the executive session of the Board, I would hold the order dismissing the teacher to be null and void, and would direct that the teacher is entitled to full back pay including benefits and reinstatement. Section 22–63–117, C.R.S. 1973.