United States Steel Supply Division of United States Steel Corporation, Appellant, *v.* City of Pittsburgh, Pennsylvania Commission of Human Relations, Appellee.

Argued November 6, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*James T. Carney,* for appellant.

*Robert B. Smith,* Assistant City Solicitor, with him *Ralph Lynch, Jr.,* City Solicitor, for appellee.

OPINION BY JUDGE KRAMER, February 19, 1975:

This is an appeal by the United States Steel Supply Division of the United States Steel Corporation (Supply Division) from an order of the Court of Common Pleas of Allegheny County, dated November 20, 1973. The order dismissed an appeal by the Supply Division and affirmed an adjudication by the City of Pittsburgh, Commission on Human Relations (Commission). The Commissions' adjudication, dated March 6, 1972, found that the Supply Division had violated section 8(a) of the Pittsburgh Human Relations Ordinance (Ordinance), Ordinance 75 of 1967 of the City of Pittsburgh, *as amended,* by discriminating on the basis of race in dismissing an employee, Mrs. Thelma B. Davis (Davis).

Davis was employed by the Supply Division from 1966 until she was discharged on February 2, 1970.[1] The record indicates that on February 3, 1970, Davis was discharged by the acting office manager[2] following an altercation with her immediate supervisor. On February 4, 1970, Davis filed an informal complaint with the Commission. On April 13, 1970, she signed a formal

---

[1] The Commission found that Davis was discharged on February 2, 1970; the testimony in the record indicates that the actual date of discharge was February 3, 1970.

[2] The record indicates that at the time of Davis' discharge the Supply Division's office manager was on vacation.

complaint. A hearing was held before the Commission on June 4, 1971. Davis' testimony at the hearing indicated that she believed she was discharged because of her race. The acting office manager, who discharged Davis, testified that she was discharged "because she couldn't get along with her co-workers or supervisors" and "because she was insubordinate and unmanageable in her work situation." On March 6, 1972, the Commission decided that the Supply Division had violated section 8(a) of the Ordinance in dismissing Davis and entered an order which included the following provisions:

"1. That the United States Steel Corporation, including the United States Steel Supply Division, cease and desist from discrimination on the basis of race and that Complainant be reinstated to work either at the United States Steel Supply Division or some other division office or department of the United States Steel Corporation at a comparable clerical position.

"2. That United States Steel Corporation shall immediately pay to Mrs. Thelma Davis damages for loss of wages due to the discrimination cited herein. To that end, counsel for the parties will meet and stipulate as to damages, and if a stipulation cannot be agreed upon, a further Order on damages will be entered in this proceeding.

"IT IS FURTHER ORDERED that the United States Steel Supply Division proceed with an affirmative program to employ black applicants for future available positions within that division."

On October 2, 1972, the Commission, pursuant to paragraph 2 of the March 6, 1972 order, entered a supplemental order requiring United States Steel Corporation to pay Davis $14,274.20 as "damages for loss of wages." The Supply Division appealed the Commission's orders to the lower court. The lower court nei-

ther took additional testimony nor received additional evidence. On November 20, 1973, the lower court issued a decision in which it held that "[t]he findings of the commission are supported by substantial, legally credible evidence . . . and its decision was not arbitrary, capricious or an abuse of discretion." The court, therefore, dismissed the Supply Division's appeal.

In its appeal to this Court, the Supply Division argues that (1) it was denied due process of law when the same individuals who decided to prosecute the discrimination complaint sat on the hearing panel which adjudicated the charge brought by Davis; (2) that the Commission's decision is not supported by substantial evidence in the record; and (3) that the Commission's order was too broad.

In view of the fact that the lower court did not take any additional testimony or receive any additional evidence, our scope of review in this case is to determine whether the Commission abused its discretion or committed an error of law. *See Pittsburgh Press Employment Advertising Discrimination Appeal,* 4 Pa. Commonwealth Ct. 448, 287 A. 2d 161 (1972).

We have carefully reviewed the record in this case, and we conclude that we must reverse because the Commission's findings of fact are not sufficient to support its conclusion that section 8(a) of the Ordinance was violated. The Commission's adjudication includes the following unnumbered findings of fact:

"Mrs. Thelma B. Davis is a black female who was employed by the United States Steel Corporation on May 5, 1966.

"Mrs. Davis had received her training at Connelly Vocational School, M.D.T.A. program, and was very highly recommended by her teachers for this employment.

"Mrs. Davis took an examination, given by the Re-

spondent, and appeared to possess all of the necessary skills for her future employment.

"The United States Steel Supply Division of the United States Steel Corporation had never employed Negro personnel, either in clerical, secretarial, or any capacity other than laborers in the warehouse who performed menial jobs.

"The first year of Complainant's employment went without major incident, but beginning in 1966 Complainant experienced difficulties with other employees and was the victim of name calling (i.e., racial slurs) and suffered damage to personal property, the only employee to experience such.

"Complainant had, on several occasions, reported the incidents to her immediate supervisor but in all cases little or no credence was given them, with the word of the other employee taken for value.

"Complainant experienced difficulties in the Flexograph Room and was transferred to the File Room but the difficulties continued.

"On February 2, 1970, when Complainant went to the then acting manager to complain concerning damage to her boots, she was summarily dismissed from the employment of the United States Steel Supply Division.

"The Complainant was dismissed on the spot and no apparent effort was made to determine the validity of her complaint of the incident.

"Various employee conflicts apparently occurred in the office where complainant worked and the supervisor and management appeared unable or unwilling to ameliorate these employee problems. *On investigation by Commission on Human Relations staff after the dismissal of the employee, it appeared that Complainant's records were kept in a different fashion than the records of other employees, and letters involving other employees, critical of Complainant, were kept in the Complainant's file.*" (Emphasis added.)

The Commission concluded from these facts that the Supply Division "in dismissing Mrs. Davis" had violated Section 8(a) of the Ordinance which reads in pertinent part: "It shall be an unlawful employment practice . . . (a) For any employer . . . to discriminate against any person with respect to . . . discharge. . . ." Section 4(b) of the Ordinance defines discrimination as follows: "The terms 'discriminate' and 'discrimination' include any difference in Treatment based on race, color, religion, ancestry, national origin, place of birth, or sex." A careful reading of the Commission's findings, quoted above, leads us to conclude that they are not related to the offense which the Commission concluded took place. The findings offer no information concerning how the Supply Division discriminated "in dismissing Mrs. Davis" and therefore do not support the Commission's conclusion.

The findings concerning Davis' qualifications for her job are irrelevant to the charge involved, and the finding concerning the Supply Division's employment practices is also irrelevant. The fact that Davis experienced difficulties with her fellow employees does not support the charge that the Supply Division discriminated against her. The Commission's finding that Davis' supervisor gave little credence to her complaints is not related to the charge that a discriminatory discharge took place and, also, is not supported by the evidence. There is unrebutted testimony in this record which indicates that Davis' immediate supervisor and the office manager were aware of Davis' problems and did make some efforts (including transferring Davis to the File Room) to alleviate them. Indeed, the Commission recognized this fact in its opinion by stating that "[t]here also appears to be some evidence that from time to time the office Supervisor and Manager attempted to resolve some of the problems relating to Complainant's [Davis'] employment but that these efforts

were both ineffectual and sporadic." The fact that the Supply Division did not succeed in resolving Davis' problems is not sufficient to support the charge of a discriminatory discharge. The finding that Davis was summarily dismissed after she complained about her boots is supported in the record, but it is not really relevant because it in no way helps to resolve the issue of whether Davis was treated differently because of her race. If Davis' conduct was such that any employee acting in the same manner would have been summarily dismissed, then the Supply Division did not discriminate. The Commission's findings note that Davis was summarily dismissed but offer no information as to whether or not the dismissal was based upon her race. The fact that no effort was made to determine the validity of Davis' complaint concerning her boots is irrelevant if Davis' conduct actually warranted a summary dismissal without regard to her race. Davis' supervisor testified that when he attempted to discuss Davis' complaint with her, she became insubordinate. The crucial issue involved in this case is whether or not Davis was treated differently by the Supply Division because of her race. These findings simply do not relate to that issue.

The only finding of fact made by the Commission which might conceivably justify a conclusion that Section 8(a) of the Ordinance was violated is the last finding of fact, emphasized above. Our review of the record, however, leads us to conclude that the last finding is misleading and is not sufficient to support the Commission's conclusion that the Ordinance had been violated. The record indicates that the Commission's investigator received Davis' personnel file and the files of three of her co-workers on May 28, 1971, more than one year after the date on which Davis lodged her initial complaint with the Commission. The Commission's investigator testified that, at that time, Davis' file con-

tained certain documents not present in the other employees' files and the Commission concluded from this testimony that the Davis file had been kept improperly in a fashion different from the files of the other employees. Upon cross-examination, the Commission's investigator admitted that he did not know when the subject documents had been added to Davis' file. Davis' immediate supervisor thereafter testified that Davis' file was kept in the same fashion as all other personnel files until after her discharge, and after she lodged her complaint with the Commission, which would appear to be the normal procedure for any employer facing such a lawsuit. The supervisor testified that after Davis lodged her complaint evidence relating to her employment history was gathered together and placed in her file. This testimony was not contradicted or rebutted in any way. Thus, there is no evidence in this record to support a finding that Davis' file was treated differently *prior* to the time that she lodged her complaint with the Commission. The finding fails to state the basis for the difference in treatment. We are forced to conclude that the Commission's last finding is not sufficient to support the conclusion that Section 8(a) of the Ordinance was violated.

Because none of the findings is sufficient to support the Commission's conclusion, we must sustain the Supply Division's appeal and set aside the Commission's order. In view of this result we need not discuss the additional issues raised by the Supply Division. In accordance with the above opinion, we therefore

### ORDER

AND Now, this 19th day of February, 1975, the appeal of the United States Steel Supply Division, United States Steel Corporation, is hereby sustained, and the orders of the City of Pittsburgh, Commission on Human Relations, dated March 6, 1972 and October 2, 1972, are hereby vacated.