## Popp v. Western Beaver County School District

*Bernard Rabik,* for petitioners.
*Alfred L. Steff, Jr.,* for respondents.

ROWLEY, *J.,* February 13, 1979—On November 9, 1978, at approximately 3:15 p.m., appellant, Russell Victor Popp, a senior at Western Beaver County High School, drove his father's automobile into the high school parking lot. Appellant had not been in school that day due to an illness but had driven to school for the purpose of "picking up" his cousin after school. School was letting out for the day when appellant drove into the parking lot. Although a parking permit had been issued to appellant by the school district, it had not been affixed to his father's car due to a damaged bumper which was soon to be replaced. Patrolman Russell Engle of the Industry Borough Police Department observed appellant's automobile enter the parking lot and noticed that it did not have a parking permit. Officer Engle approached the car to question appellant and smelled an odor of marijuana about the vehicle. Officer Engle observed, in an open ashtray on the dash of appellant's automobile, what he believed to be "roaches" or burnt marijuana cigarettes. A search of the vehicle disclosed nine "roaches," some marijuana seeds and the burnt remains of hand rolled cigarette papers. The officer found, in appellant's rear pocket, a pack of cigarette

papers. The amount of marijuana involved was less than 30 grams.

The school district had in effect at the time a regulation which provided that any student found in possession of restricted drugs on school grounds, at any time, would "be subject to exclusion from school." Appellant was aware of the regulation. Officer Engle confiscated the roaches, seeds and cigarette papers and took appellant to the office of the high school principal. The following day, on Friday, November 10, 1978, officer Engle, the high school principal, the assistant principal and appellant had a conference in the principal's office concerning the matter. At that time appellant was advised by the principal that he was suspended, effective November 13, 1978, and that a notice of a hearing to be held in the matter would be sent to him and his parents. A written notice was sent, by mail, to appellant and his parents notifying them that appellant had been suspended from school for a period of 10 school days, beginning Tuesday, November 14, 1978, for his violation of the regulation prohibiting possession of restricted drugs on school grounds. The notice stated that a hearing would be held before the board of school directors of the school district on November 30, 1978, and advised that appellant could either be further suspended or permanently expelled from the school district. The notice also stated that the hearing would be conducted in accordance with the "Local Agency Law" and that any decision made by the directors could be appealed in accordance with that law. The notice was received by appellant's mother on November 13, 1978. Appellant was not permitted in school after November 10, 1978, and had not returned as late as January 9, 1979.

On November 30, 1978, a hearing was held before the school district solicitor who was designated as the hearing examiner[1] and five members of the school board. Appellant and his parents attended the hearing and participated therein. At the conclusion of the hearing the school district solicitor advised appellant that "the board will decide the matter."

On January 3, 1979, appellant and his parents, having received no official decision from the board, filed a complaint in equity asking that a mandatory injunction be issued against the school district's board of directors directing that appellant be immediately reinstated as a student in the high school pending a determination of the matter by the board and his appeal therefrom in the event that the board's decision was adverse to him. A hearing on appellant's request for a preliminary, mandatory injunction was scheduled for Friday, January 5, 1979. During the afternoon of January 4, 1979, the board's solicitor delivered to appellant's counsel a written "adjudication" and "decree" which had been signed by the solicitor.[2] The "decree," which

---

1. The extent of the solicitor's participation in the hearing and its effect on appellant's right to a "due process" hearing was not raised as an issue in this case and for that reason was not considered. See, however, Sharon City School Dist. v. Hudson, 34 Pa. Commonwealth Ct. 278, 383 A. 2d 249 (1978).

2. The "adjudication" was not signed by any officer of the board and does not disclose whether the board ever took any official action with reference to appellant's hearing. It is unnecessary to remand the matter to the board, however, in view of our conclusion that other defects, which cannot be remedied by filing a new adjudication, require that the appeal be sustained.

was dated January 4, 1979, provided that appellant "be permanently expelled from the school rolls of the" school district. On the following day, January 5, 1979, prior to the hearing scheduled on appellant's request for a preliminary injunction, appellant filed an appeal from the "adjudication" and "decree" served on him the previous day. The appeal was filed at the same number, by the prothonotary, as that given the complaint and action in equity. At the time set for the hearing on appellant's request for a preliminary injunction, it was agreed by counsel for the parties that the matter should proceed as a hearing on appellant's appeal and appellant presented an application for a supersedeas pending the court's determination of the matter. The matter was submitted to the court on the following record: (1) the "adjudication" and "decree"; (2) a transcript of the hearing held on November 30, 1978; (3) a copy of the notice sent by the assistant principal to appellant and his parents, together with the return receipt signed by appellant's mother, and (4) a copy of the school district's rules and regulations for the 1978-79 school year. On January 9, 1979, an order was entered by the court sustaining the appeal and directing that appellant be reinstated as a student effective immediately. The order also stated that an opinion would be filed at a later date. This opinion is written for the purpose of setting forth the reasons for our order of January 9, 1979, directing appellant's reinstatement as a student.

There can be no doubt that the school board's "adjudication" is appealable under the applicable provisions of the Local Agency Law of December 2, 1968, P.L. 1133, 53 P.S. §11301 et seq. The decision

of the school district in this case affected appellant's right to attend school and obtain an education. As such, the decision is appealable: McDonald v. Penn Hills Twp. School Board, 7 Pa. Commonwealth Ct. 339, 298 A. 2d 612 (1972). The scope of our review of the school board's "adjudication" is equally clear. Section 8(b) of the Local Agency Law, 53 P.S. §11308(b), provides that we must affirm the decision of the school board unless it appears from the record submitted that appellant's constitutional rights have been violated, that the "adjudication" is not in accordance with the applicable law, that the provisions of the Local Agency Law were violated by the school board, or that the board's findings of fact are not supported by substantial evidence. The solicitor for the school board argues that none of those conditions are disclosed by the present record and, on the authority of Appeal of Marple Newtown School District, 27 Pa. Commonwealth Ct. 588, 367 A. 2d 399 (1976), we must affirm the school board's decision. However, Judge Mencer, in his opinion for the Commonwealth Court in the Marple Newtown case pointed out that the trial court had found no violation of any constitutional rights, no error of law or violation of the local agency act, nor did it determine that the board's findings of fact in that case were unsupported by substantial evidence. On the contrary, in the case before us, we have concluded that the board's decision is not in accordance with applicable requirements of the law and under such circumstances must be reversed. Compare U. S. Steel Supply Division v. City of Pittsburgh, 16 Pa. Commonwealth Ct. 425, 332 A. 2d 871 (1975), where the court held that the evidence before the City of

Pittsburgh Commission on Human Relations did not support the conclusions of the commission. The commission's conclusion that the appellant had violated the provisions of the Pittsburgh Human Relations Ordinance was reversed. Also compare Thomas v. Crawford County Commissioners (No. 2), 4 D. & C. 3d 627 (1976).

In this case appellant's counsel argues, and we agree, that the school district failed to comply with, and its proceedings were not in accordance with, the requirements of sections 12.6 and 12.8 of the regulations promulgated by the Pennsylvania State Board of Education pertaining to student conduct and discipline: 22 Pa. Code §§12.6 and 12.8. The regulations were adopted and published by the state board in 1974. They have been entitled and come to be known popularly as the student "Bill of Rights." This popular description, however, overlooks the fact that the regulations also are addressed to student responsibilities. The regulations, after their adoption, were challenged by 29 local school districts in the Commonwealth which asserted that the state board did not have the power or authority to adopt them. The Supreme Court of Pennsylvania, however, on October 5, 1978, in Girard School District v. Pittenger, 481 Pa. 91, 392 A. 2d 261 (1978), held that the rules and regulations were a valid exercise of the state board's legislative rule-making power which had been vested in the board by the Pennsylvania Legislature. Mr. Justice Pomeroy, in his opinion for the court, quoted with approval from a decision of the United States Supreme Court in American Telephone and Telegraph Co. v. United States, 229 U.S. 232 (1936), in which it was pointed out that courts, in reviewing regulations promulgated pursuant to an

agency's "legislative rule-making power," are not at liberty to substitute their discretion for that exercised by administrative officers. Such regulations, it was pointed out, are as valid and binding upon a court as a statute enacted by the General Assembly. Thus, the regulations promulgated by the State Board of Education have the same force and effect and are as binding on the respondent school district and this court as are the provisions of the school code itself which has been enacted by the General Assembly. Under such circumstances the school district's failure to comply with those regulations make it clear to us that the decision was not in accordance with the applicable law.

The school district, in these proceedings, failed to comply with sections 12.6 and 12.8 of the applicable regulations. Under those regulations a student may be excluded from school by one or more of three methods. One is by a temporary suspension by the principal, without a hearing. Such a suspension may not exceed a period of three school days, however. The second method is by a "full suspension," which may be imposed only after an informal hearing and may not exceed a period of 10 school days. The third and obviously most drastic method is that entitled "expulsion" which may not be imposed without a prior formal hearing and may be for a period exceeding 10 school days including a permanent expulsion from the school system. In this case the solicitor for the school district argues that the conference on Friday, November 10, 1978, between the principal, officer Engle and appellant was an informal hearing which justified the 10-day full suspension which he imposed. However, section 12.8(g)(2) of the regulations provides that sufficient notice of the time and place of the informal

hearing must be given. Section 12.6(b)(2) provides that the informal hearing must be offered to the student and to *"the student's parents"* in accordance with board policies. The purpose of requiring that the informal hearing be offered to the student's parents, as well as the student, is to encourage the parents to meet with the school authorities in order that there may be a mutual discussion of ways by which future offenses may be avoided; §12.8(f). In this case, none of these requirements were met or observed by the school principal. The record does not disclose that any notice of the time and place of the so-called informal hearing on November 10, 1978, in the principal's office, was ever given to appellant prior thereto. Moreover, there is no evidence, or claim made by the district, that the student's parents were offered the opportunity to be present at and participate in that so-called informal conference. Therefore, we have concluded that the attempted suspension for a period of 10 school days was invalid because of the failure to provide the necessary due process requirements prior to such a hearing.

The regulations also provide that the combined maximum period of suspension, whether temporary or full or combined, shall be 10 school days. Regulation 12.6(e) provides that during the period prior to a formal hearing and decision by the directors in an expulsion case, "the student *shall be* placed in his or her normal class." The school district obviously failed to comply with that requirement in this case. Appellant was not back in school after November 10, 1978, until after our order of January 9, 1979. The decision of the board was not served on appellant's counsel until January 4, 1979. Nor, apparently, was it made until that date.

Yet in total disregard of the regulations the district failed to place appellant in his normal class pending the board's decision. Moreover, the period of school missed was far in excess of 10 school days and cannot be justified as a "full suspension." It is true that §12.6(g) provides for an exception to the requirement that the student be placed in his or her normal class, but that exception applies only when the board determines, after an informal hearing, that the student's presence in class would constitute a threat to the health, safety, morals or welfare of others, and, further, that it is not possible to hold a formal hearing within the 10-day period of a full suspension. No such informal hearing was held in this regard and there is no evidence in the record which would support a claim that appellant's presence in his classes would endanger the health, safety, morals or welfare of others in the school district. In its adjudication, the finding is made that appellant "is not a discipline problem in school and attends school regularly." Moreover, the assistant principal testified at the hearing on November 30, 1978, that appellant was steadily improving in his behavior around the school and that although at one time in his career he had been in the assistant principal's office "a lot of time," in the last couple of years he had not spent "that much time" there. Prior to November 9, 1978, appellant had only missed two days of school during the school year. The assistant principal testified that he could not characterize appellant as a discipline problem. The principal testified that basically appellant "has a pretty good slate this year." He had in his file two "pink slips" which were placed there because he had left the cafeteria during lunch time on two occasions without a pass. He was warned the first

time and on the second was given detention. Other than that he was not a problem. Moreover, the amount of marijuana residue discovered in this case is far less than one ounce. There is no evidence that appellant furnished or supplied it to anyone else. Nor can we infer from the small amount found or its condition that it was intended for another's use. Furthermore, the offense occurred after school and outside the school building. It did not involve any of the other students, faculty or administrators until after officer Engle had made his observations and took appellant to the principal's office. Thus, there is nothing in the record that would justify, even if an informal hearing in this regard had been held, appellant's exclusion from school for more than the maximum 10-day "full suspension" allowed prior to a decision on the expulsion proceedings. Moreover, the regulations require that in the event a student is excluded from classes after the tenth school day pending determination and decision in an expulsion case, he must be provided by the board with alternative instruction. Again no effort was made to comply with this requirement. Finally, the regulations require that when a student is excluded from class after the 10-day maximum full suspension, the board's formal hearing shall not be unreasonably delayed. In the record before us there is no explanation for the delay in making a decision and filing the adjudication until January 4. In fact, the record which discloses that appellant's complaint in equity was filed on the day previous to the filing of the adjudication warrants the inference that it was only the institution of legal proceedings that brought about the necessary decision.

Therefore, since the proceedings by which appellant was excluded from school and his permanent expulsion therefrom were not in accordance with the law, we have been compelled to reverse the decision of the school district and order appellant's reinstatement.[3] In so concluding, however, we are not unmindful of the statement of the court in Minnicks v. McKeesport Area School District, 74 D. & C. 2d 744, 753 (Allegheny Co. 1975), where the court said:

"In reaching the conclusion that [the board failed to comply with the applicable law], the court is not condoning the alleged activities which led to the disciplinary action.

"The court also recognizes the many problems faced by dedicated citizen school boards in maintaining the discipline and order necessary to protect the educational rights of the majority of the students.

"However, it is the essence of American constitutional rights that they are extended to all persons irrespective of the charged offense."

For all of the foregoing reasons, we entered our order dated January 9, 1979, sustaining the appeal of appellant and directing that he be reinstated as a student immediately.

---

3. Appellant also argues that the school district regulation upon which his expulsion is based "is unconstitutionally vague." In light of our conclusion that the school district failed to comply with applicable state regulations it is not necessary for us to decide the issue of the validity of the school district regulation and we express no opinion thereon in this case.