Richard RICCI, Plaintiff-Appellant,

v.

William A. DAVIS, Glenna G. James, Douglas A. Johnson, Edward L. Lord, T. H. Pickens, Doyle K. Seawright, individually and as members of the Board of Education of Joint School District 28–J of the Counties of Adams and Arapahoe, Aurora, Colorado, a/k/a Aurora Public Schools, Defendants-Appellees.

No. 79SA386.

Supreme Court of Colorado,
En Banc.

May 4, 1981.

1114

Cirkal & Sandman, Jeffrey I. Sandman, Denver, for plaintiff-appellant.

Holland & Hart, Bruce W. Sattler, Deborah J. Friedman, Denver, for defendants-appellees.

DUBOFSKY, Justice.

Appellant Richard Ricci (Ricci), a tenured teacher, appeals from an order of the Arapahoe County District Court affirming the decision of the appellee Board of Education of Joint School District 28–J (Board), dismissing him from his teaching position at Hinkley High School in Aurora, Colorado. We affirm.

On August 22, 1977, the chief executive officer of the appellee Joint School District 28–J (District) filed written charges against Ricci with the Board. *See* section 22–63–117(2), C.R.S.1973. The charges read:

"You, Richard Ricci, are charged with engaging in improper and/or unprofessional conduct with females who are or were, at the time of the incidents, students at Hinkley High School, which conduct constitutes immorality or other good and just cause for your dismissal." [1]

---

1. The grounds for dismissal of a tenured teacher are set out in section 22–63–116, C.R.S.1973, which provides in pertinent part:

 "The grounds for dismissal of a tenured teacher shall be physical or mental disability, incompetency, neglect of duty, *immorality*, conviction of a felony, insubordination, *or other good and just cause.*"
 (Emphasis added.)

At the time the charges were filed, the Board had received signed, notarized statements from four female students alleging that Ricci had engaged in acts of sexual misconduct with them. An accompanying memorandum from the District stated that the charges were based on the allegations of the four students and the anticipated testimony of a fifth female student. At its regular meeting on August 22, 1977, the Board resolved to accept the charges for review. *See* section 22–63–117(2).

Immediately thereafter, Ricci was notified of the charges against him. *See* section 22–63–117(3). In addition to the notice prescribed by the statute, he was also furnished with copies of the four students' written statements and a summary of the expected testimony of the fifth student.

Ricci timely requested a hearing on the charges, *see* section 22–63–117(3), and a teacher tenure hearing panel (Panel) was convened in accordance with the provisions of section 22–63–117(3) and (5). On August 29, Ricci filed motions to make more definite and certain the charge of "other good and just cause" and to permit him to depose the student complainants. The Panel denied these motions.

On September 16, 17, 18, and 21, 1977, the Panel heard the testimony of numerous witnesses—including the five female students—and admitted several exhibits into evidence. *See* section 22–63–117(6) and (7). On October 11, 1977, the Panel issued its findings of fact and recommended, by a majority of 2–1, that Ricci be dismissed. *See* section 22–63–117(8). The Panel's findings and recommendation and a transcript of the hearing, were received by the Board. *Id.* On October 24, 1977, the Board, by a 6–1 vote, entered a Resolution and Order of Dismissal. The Resolution recited that the Board had reviewed the Panel's findings of fact and recommendation, had "familiarized itself with such portions of the transcript of the hearing and the exhibits attached as it deem[ed] necessary" and had concluded that Ricci's conduct, as found by the Panel—i. e.,

that "Mr. Ricci kissed a female student and was involved in other incidents in which he touched female students"—constituted immorality and good and just cause for dismissal, impaired his ability to perform his duties as a teacher, indicated his general unfitness for teaching and was likely to have an adverse effect on students. *See* section 22–63–117(9) and (10).

Ricci filed a timely petition for judicial review of the Board's action. *See* section 22–63–117(11) and section 24–4–106, C.R.S. 1973. On June 15, 1979, the district court affirmed the Board's Resolution and Order of Dismissal.

On appeal, Ricci challenges his dismissal on five grounds. First, he contends that the Board's review of portions of the hearing transcript conflicts with our holding in *Blair v. Lovett*, 196 Colo. 118, 582 P.2d 668 (1978), and impermissibly "tainted" its findings of ultimate fact. Because we do not read *Blair* to prohibit the Board from reviewing the transcript for the limited purpose of determining whether the Panel's findings are supported by competent evidence and because the record in no way suggests that the Board based its conclusions of ultimate fact on evidence outside the four corners of the Panel's findings, we hold that the Board acted within its authority when it reviewed the hearing transcript.

Second, Ricci argues that both the Panel's findings of basic fact and the Board's findings of the ultimate facts of "immorality indicating unfitness to teach" and "other good and just cause" are unsupported by substantial evidence. We reject this contention, concluding, first, that the Panel's findings are supported by competent evidence in the record as a whole and, second, that the Board's ultimate determination of immorality indicating unfitness to teach has warrant in the record and a rational basis in law.

Third, Ricci attacks the provision of section 22–63–116 authorizing dismissal of a tenured teacher for "other good and just

cause" as unconstitutionally vague. Because we find that the Board validly dismissed Ricci on the independent statutory ground of "immorality" indicating unfitness to teach, we decline to reach this constitutional question.

Fourth, Ricci asserts that the statements of the four female students, submitted to the Board on or before August 22, 1977 to substantiate the charges filed by the District, comprised extra-record evidence which the Board could not constitutionally consider before entering its order of dismissal. We reject this argument, concluding that the Board's preliminary investigation comported with the due process guidelines announced in *Weissman v. Board of Education,* 190 Colo. 414, 547 P.2d 1267 (1976).

Finally, Ricci contends that the Panel's denial of his motions for a more definite statement and to permit discovery denied him due process of the law. Because we uphold Ricci's dismissal on grounds of "immorality" indicating unfitness to teach rather than "other good and just cause" and because we perceive no significant prejudice to Ricci from the denial of his motion to permit discovery, we hold that the Panel's actions did not constitute reversible error.

### I.

Ricci first argues that the Board's admission that it "familiarized itself with such portions of the transcript of the [Panel] hearing ... as it deem[ed] necessary," evidences a departure from the procedures dictated by *Blair v. Lovett, supra,* and leads inexorably to the conclusion that the Board based its findings of ultimate fact on the "raw" evidence adduced before the Panel as well as or in lieu of the Panel's formal findings of basic fact. We disagree. In *Blair* we recognized that the legislative scheme embodied in section 22–63–117 was:

"designed to provide substantial protection for the academic freedom of teachers

who have achieved tenured status. A primary facet of that protection is the availability at the teacher's request, of an evidentiary hearing panel chosen in a manner to ensure its neutrality."

196 Colo. at 122, 582 P.2d at 671. We therefore concluded:

"In order that this legislative attempt to provide a neutral forum for presentation of evidence will not be merely illusory, it is essential that the panel's role, in hearing and reviewing the evidence, be more than just advisory. Were we to hold that the board of education can *disregard the panel's findings* of fact *and substitute its own,* a significant portion, if not all, of the insulation afforded by an impartial hearing panel would be lost.

\* \* \* \* \* \*

For these reasons, we hold that *the panel's findings of 'basic,' or evidentiary, facts, if supported by competent evidence, are binding on the board of education. The board may not disregard those findings nor substitute its own findings."*

*Id.,* 196 Colo. at 123, 582 P.2d at 671 (emphasis added). The mischief *Blair* was meant to counteract is the heightened risk of biased and inaccurate fact-finding entailed by allowing a school board to overrule or supplement the hearing panel's findings of evidentiary fact on the basis of the board's perusal of a "cold" hearing transcript. However, despite an ambiguous passage,[2] our holding in *Blair* was not intended to preclude a school board from conducting *any* review whatsoever of the hearing record—as we intimated when we twice stated that the hearing panel's findings of evidentiary fact are binding on a school board *only* if they are supported by competent evidence in that record.

 Properly construed, *Blair* held that although a school board may not conduct a full review of the record intended to supplement or supersede the hearing panel's findings of basic fact, it may review the record

---

**2.** Construing section 22–63–117(8) and (10) we noted that "the statute does not authorize the board to conduct a second full *review of the*

*evidence* or to adopt new fact findings." *Blair v. Lovett, supra,* 196 Colo. at 123, 582 P.2d at 672 (emphasis in the original).

for the limited purpose of determining whether the panel's basic factual findings are supported by competent evidence. *See Suley v. Board of Education*, (Court of Appeals No. 79CA0690, announced March 19, 1981).[3] We therefore hold that it was not *per se* improper for the Board in this case to review "such portions of the transcript . . . as it deem[ed] necessary."

■ However, as *Blair* makes clear, a school board is *bound* by the findings of evidentiary fact made by the hearing panel if those findings are adequately supported in the record of the panel's proceedings. A board may not usurp the panel's exclusive authority to find evidentiary facts by basing its conclusions of ultimate fact in whole or in part on "raw" evidence gleaned from its review of the hearing transcript.[4] Moreover, as is more fully explained in the following section of this opinion, a board's ultimate findings must be fully warranted by the basic facts embodied in the panel's formal, written statement of its findings.

■ Here, Ricci contends, the Board's familiarity with the transcript "tainted" its ultimate findings. However, the Board's findings and decision are entitled to a presumption of regularity. *See Public Utilities Commission v. District Court*, 163 Colo. 462, 431 P.2d 773 (1967); *United States v. Litton Industries*, 462 F.2d 14 (9th Cir. 1972). While this presumption is rebuttable, *see Hercules, Inc. v. Environmental Protection Agency*, 598 F.2d 91 (D.C.Cir.1978), there is nothing in the record before us to suggest that the Board evaded its obligation to draw its ultimate conclusions solely and exclusively from the evidentiary facts found by the panel. In the absence of any evidence of impropriety, and in view of our conclusion, *infra*, that the Board's findings of ultimate fact have warrant within the four corners of the Panel's findings, we conclude that the Board's review of the record, its findings and its order of dismissal are fully consistent with the strictures of *Blair v. Lovett, supra.*

## II.

In *Weissman v. Board of Education, supra*, we construed the provision of section 22–63–116 authorizing a school board to dismiss a tenured teacher for "immorality" and held that "[a teacher's] actions cannot constitute immorality within the meaning of the statute unless these actions indicate his unfitness to teach." 190 Colo. at 420, 547 P.2d at 1272. Our interpretation of the statute reflected our recognition that:

"[T]he board's power to dismiss and discipline teachers . . . exists and finds its justification in the state's legitimate interest in protecting the school community from harm, and its exercise can only be justified upon a showing that such harm has or is likely to occur."

*Id.*, 190 Colo. at 421, 547 P.2d at 1273.

Ricci contends that the Panel's findings of basic fact fail to demonstrate that his conduct harmed or was likely to harm the school community and are therefore insufficient to justify the Board's ultimate finding that his conduct was immoral and indicated his unfitness to teach. We disagree.

■ To resolve this question, we must both identify the standard of judicial review applicable to a school board's findings

---

**3.** A school board's power to review the record to ascertain whether the panel's findings are supported by the evidence is confirmed by the 1979 amendments to section 22–63–117 which provide:

"[T]he board shall make a conclusion, giving its reasons therefor, that the hearing officer's findings of fact are not supported by the record made before the hearing officer if it dismisses the teacher over the hearing offi-

cer's recommendation of retention, and such finding shall be included in its written order." Section 22–63–117(10), C.R.S.1973 (1980 Supp.).

**4.** If, as may sometimes be the case, a hearing panel's findings of basic fact are insufficiently explicit or detailed to enable a school board to make findings of ultimate fact, the proper remedy, under *Blair*, is a remand to the panel for more specific findings. A board may not re-

of ultimate fact,[5] and measure the Board's ultimate findings in this case against that standard.

In *Blair v. Lovett, supra,* we drew a sharp distinction between findings of basic or evidentiary fact and findings of ultimate fact. Evidentiary facts are found by a hearing panel after it has taken and weighed evidence, as to both accuracy and credibility, at the hearing afforded a tenured teacher by section 22–63–117(5)–(8). These findings are binding on a board of education if supported by substantial and competent evidence in the record and furnish the sole bases for the board's findings of ultimate facts. Ultimate facts, on the other hand, are stated in terms of the statutory standard. "An ultimate finding may be and usually is mixed with ideas of law or policy.... 'The ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact.'" 2 *K. Davis, Administrative Law Treatise* § 16.06 (1958) (quoting from *Helvering v. Tex-Penn Oil Co.,* 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755 (1937)).

Finding ultimate facts is the exclusive prerogative of elected school boards. Because these boards "have the responsibility of implementing and carrying out the educational programs of their respective communities," *Blair v. Lovett, supra,* 196 Colo. at 124, 582 P.2d at 672–73, they must have the case-by-case authority to "define the limits of such broad general grounds [for dismissal under section 22–63–116] as 'incompetency' and 'immorality' in the educational context," *id.,* 196 Colo. at 124, 582 P.2d at 672. Although a school board's "considerable discretion" to fix the precise substantive content of these statutory terms is subject to judicial review, *id.,* a reviewing court may not freely substitute its comparatively uninformed judgment for the board's experienced appraisal of the harm inflicted on the school community by particular instances of a teacher's conduct with female students. As the United States Supreme Court has observed:

> "Undoubtedly questions of statutory interpretation, especially when arising in the first instance in judicial proceedings, are for the courts to resolve. [Citations omitted.] But where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court's function is limited.... *[The agency's] determination ... is to be accepted if it has 'warrant in the records' and a reasonable basis in law."*

*National Labor Relations Board v. Hearst Publications, Inc.,* 322 U.S. 111, 130–131, 64 S.Ct. 851, 860–61, 88 L.Ed. 1170, 1184–85 (1944) (emphasis added). *See Colorado River Conservation District v. United States,* 593 F.2d 907 (10th Cir. 1977); *United States v. Allen Drug Corporation,* 357 F.2d 713 (10th Cir. 1966).

As noted earlier, we construed the statutory term "immorality" in *Weissman v. Board of Education, supra,* to denote only conduct which indicates a teacher's "unfitness to teach"—i. e., only conduct which harmed or is likely to harm the school community. However, we recognized, both there and in *Blair v. Lovett, supra,* that, in view of the variousness of human behavior, "[i]t would be folly to suggest that ...

---

view the record to answer unanswered questions or supply omitted information.

5. Section 22–63–117(11) provides that an order of dismissal entered in accordance with sections 22–63–116 and 117 is to be reviewed pursuant to section 24–4–106, C.R.S.1973 (the State Administrative Procedure Act). Both Ricci and the Board assume that the standard of review prescribed by that section is the "substantial evidence test." However, in a bifurcated proceeding in which one tribunal finds the evidentiary facts upon which a second tribunal bases conclusions of ultimate fact, we do not believe, for the reasons set out in the text, that the second tribunal's findings of ultimate fact are properly reviewable under the substantial evidence rubric. We agree, however, that the hearing *panel's* findings of *basic* fact must be rejected if "unsupported by substantial evidence when the record is considered as a whole," section 24–4–106(7); *Noe v. Dolan,* 197 Colo. 32, 589 P.2d 483 (1979), or if not supported by competent evidence in the record. *Blair v. Lovett, supra.*

'immorality' 'rendering one unfit to teach' is a standard so clear as to leave no leeway in determining whether the facts of a particular case meet that standard." 196 Colo. at 124, n. 14, 582 P.2d at 672, n. 14. A school board's application of the standard to a specific instance of teacher conduct will therefore be sustained by a reviewing court if it is warranted in the record and has a reasonable basis in law. *See* 4 *K. Davis, Administrative Law Treatise, supra,* § 30.-11; *see generally, L. Jaffe, Judicial Control of Administrative Action,* 569–76 (1965).

 However, before considering the propriety of the Board's ultimate findings in this case we must determine what documents constitute the record for purposes of judicial review. The Board and District urge us to scrutinize the transcript of the hearing before the Panel. While we may do so to ascertain whether the *Panel's* findings of basic fact are supported by substantial or competent evidence, *see* n. 5, *supra,* we may not review the hearing record in search of warrant for the *Board's* findings. This conclusion is compelled by *Blair v. Lovett's, supra,* holding that a panel's formal findings of basic fact are binding on the board if supported by competent evidence in the record. While we have now ruled that a school board may review the hearing transcript to ascertain, in the first instance, whether the panel's findings are adequately supported by the evidence, *Blair* nevertheless precludes a board from taking this "raw" evidence into account in reaching its conclusions of ultimate fact. The hearing panel alone is empowered to assess credibility, weigh conflicting evidence and draw

factual inferences from the testimony and exhibits introduced by the parties. Its determination of these matters is embodied in its findings of fact. To permit a board to look outside the four corners of the hearing panel's findings and base its ultimate findings, in whole or in part, on the "cold" hearing transcript would:

> "defeat one purpose of having an impartial hearing panel [to protect the academic freedom of tenured teachers by ensuring a neutral forum for the presentation of evidence] and place decisions based on the evaluation of evidence in the hands of a body which has not actually seen and heard the witnesses. Such a holding would not comport with the legislative intent underlying this statutory scheme."

*Blair v. Lovett, supra,* 196 Colo. at 123, 582 P.2d at 671. The same two purposes—guaranteeing the teacher an impartial fact-finder and promoting the accuracy and integrity of the fact-finding process—would be frustrated if a board's ultimate findings were to be retrospectively justified by "raw" evidence adduced at the hearing but never adopted as a finding of fact by the hearing panel.[6] Thus, although a school board's findings of ultimate fact must be sustained if warranted in the record, the record, for purposes of judicial review of those findings, consists *solely* of the formal findings of basic or evidentiary fact made by the panel and forwarded to the board pursuant to section 22–63–117(8).

 The Panel's findings of basic or evidentiary fact, in this case, recite that Ricci hugged, touched or kissed five female students.[7] While the findings are rather

---

**6.** In this case, for example, the wording of the Panel's findings suggests that it rejected as unworthy of belief or unproven some of the more damaging factual allegations made against Ricci by witnesses at the hearing. To now hold that that testimony is a warrant for the Board's ultimate findings of "immorality" indicating unfitness to teach would effectively remove the Panel from the pivotal role assigned to it by the legislative scheme and confirmed by the *Blair* opinion.

**7.** Ricci also contends that the Panel's findings of evidentiary fact are unsupported by substantial or competent evidence. These findings are

binding on the Board, *Blair v. Lovett, supra,* and, *ipso facto,* on a reviewing court, if so supported. *See* section 24–4–106(7); *Noe v. Dolan, supra;* n. 5, *supra.* For purposes of reviewing the Panel's findings, the record consists of the testimony and exhibits admitted at the hearing. Having reviewed the transcript of that proceeding, we conclude that it contains ample evidence supporting the Panel's findings " 'such … as a reasonable mind might accept as adequate to support a conclusion' …. '[and] to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion

sketchy, they are sufficiently detailed to indicate that three and perhaps four of these incidents occurred in a sexually charged setting.[8] Although the Panel made no specific findings respecting the adverse impact of this conduct on the school community, we have held that such findings are not necessary. Rather, "whenever a male teacher engages in sexually provocative or exploitative conduct with his minor female students, a strong presumption of unfitness arises against the teacher." *Weissman v. Board of Education, supra,* 190 Colo. at 422, 547 P.2d at 1273.

The conduct found by the Panel furnishes an adequate factual warrant for the Board's ultimate finding of "immorality indicating unfitness to teach." Moreover, in light of the *Weissman* presumption, we cannot say that the Board's finding lacks a reasonable basis in the law.[9]

### III.

Ricci next contends that the provision of section 22–63–116 authorizing dismissal of a tenured teacher for "other good and just cause" is void for vagueness. We

---

sought to be drawn is one of fact for the jury,' " *Consolo v.·Federal Maritime Commission,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131, 140 (1966) (defining "substantial evidence" for purposes of section 10(e) of the federal Administrative Procedure Act, 5 U.S.C. § 500 *et seq.); see Steadman v. S. E. C.,* —— U.S. ——, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981). The Panel's findings, in accordance with the then dispositive ruling in *Lovett v. Blair,* 39 Colo.App. 512, 571 P.2d 731 (1977), include findings of ultimate fact (i. e., that Ricci's conduct in connection with certain incidents was "not immoral") as well as findings of basic fact. It is now clear, however, that the Panel's findings of ultimate fact are not binding on and may be wholly disregarded by the Board. *Blair v. Lovett, supra.* It follows that these purely advisory findings of ultimate fact can have no bearing on our determination whether the Board's findings of ultimate fact are warranted in the Panel's findings.

"If [the Panel's] decisions [of ultimate fact] are to be given weight [by a reviewing court] it will be [the Panel] and not [the Board] who will make policy and thus the coherence and responsibility of the administrative program will be impaired."

L. Jaffe, *Judicial Control of Administrative Action, supra,* 613.

8. The relevant findings of the Panel are:

"Mr. Ricci initiated contact with Mary Roe, an eleventh grade student ... in his classroom when no one else was present.

(a) In response to a statement by Ms. Roe that *her boyfriend thought she was too skinny,* Mr. Ricci ... put both arms around her, and hugged her.

(b) While Mr. Ricci hugged Ms. Roe he told her that she was just the right size and just the right fit or words to that effect.

\*　\*　\*　\*　\*　\*

Kathy Doe, a tenth grade student ... went to visit Mr. Ricci in his classroom after school.

(a) Mr. Ricci, annoyed by what he characterized as sexually provocative behavior to-

ward him, initiated a conversation with her while he was alone with her in his classroom after school;

(b) Mr. Ricci asked Ms. Doe why she was always hanging on him ... Mr. Ricci proceeded to demonstrate all the ways in which she had allegedly touched him.

(c) Mr. Ricci then extended both arms out from his shoulders and told Ms. Doe that 'if you want to hang on me go ahead and do it.'

\*　\*　\*　\*　\*　\*

Jane Coe, a tenth grade student ... came to Mr. Ricci's classroom after school.

(a) Mr. Ricci remained alone in the classroom with Ms. Coe, with the door shut, while Ms. Coe engaged in sexually provocative conduct toward Mr. Ricci, such conduct including the rubbing of her breasts against his arm.

(b) Mr. Ricci then insulted Ms. Coe in a sexual context.

\*　\*　\*　\*　\*　\*

Mr. Ricci initiated contact with Karen Poe, a twelfth grade student ...

(a) Mr. Ricci telephoned Ms. Poe at her home and asked if he could discuss some business with her. In response to Ms. Poe's invitation, Mr. Ricci then drove to her home.

(b) Ms. Poe ... entered Mr. Ricci's car and immediately slid across the seat to sit directly beside Mr. Ricci.

(c) After driving a short distance, Mr. Ricci parked the car and the parties kissed."

(We use pseudonyms rather than the names of the complaining witnesses.)

9. However, we note that the Panel's findings in this case supply little more than the irreducible minimum of factual detail needed to enable "the board, and a court on judicial review, [to] fairly and reasonably determine whether the facts justify dismissal on the charged statutory grounds." *Blair v. Lovett, supra,* 196 Colo. at 125, 582 P.2d at 673. Were the findings any less specific or detailed we would be compelled to order the matter remanded to the Panel for more specific findings. *See Blair v. Lovett, supra;* n. 4, *supra.*

need not reach the merits of this constitutional issue. It is well settled that a court will not rule on a constitutional question which is not essential to the resolution of the controversy before it. *Board of County Commissioners v. City and County of Denver*, 194 Colo. 252, 571 P.2d 1094 (1977); *Tyler v. School District No. 1*, 177 Colo. 188, 493 P.2d 22 (1972). Moreover, Ricci, unlike the appellant in *Weissman v. Board of Education, supra*, concedes that we need not address the Fourteenth Amendment challenge to the cited provision of section 22–63–116 if we sustain the Board's order of dismissal on the alternative statutory ground of "immorality indicating unfitness to teach." [10] Because we have already held that the Board properly dismissed Ricci for conduct constituting "immorality indicating unfitness to teach," we do not reach the question whether, in the context of this case, *Weissman v. Board of Education, supra; see DeLeo v. Greenfield*, 541 F.2d 949 (2d Cir. 1976), the phrase "other good and just cause" is sufficiently explicit to give fair warning of the conduct prohibited and to minimize the risk of arbitrary and capricious enforcement. *See Colorado Auto and Truck Wreckers Association v. Department of Revenue*, Colo., 618 P.2d 646 (1980).

## IV.

Ricci next argues that the Board's consideration of extra-record evidence, here the statements of the four female students submitted to the Board on or before August 22, 1977, to substantiate the charges filed by the District, denied him due process of law.

In *Weissman v. Board of Education, supra*, we held that section 22–63–117(2) authorizes a board of education which has been asked to discipline or dismiss a tenured teacher to "conduct a limited preliminary inquiry to determine if there is any real substance to the charges against the teacher." 190 Colo. at 424, 547 P.2d at 1275. If the charges are found to be baseless, the board may elect to reject rather than re-

view them, protecting the teacher against the embarrassment and cost of additional proceedings. *See* section 22–63–117(2). However, acknowledging the hearing panel's role as the exclusive and authoritative finder of basic fact, the *Weissman* court held that the Board's inquiry must be such as "is not inconsistent with its later ability to make an impartial review of the evidence adduced by the panel. . . . The board must do nothing . . . that would serve to remove the appearance of fairness from its ultimate determination." *Id.* 190 Colo. at 425, 547 P.2d at 1276.

Here the Board received and considered statements signed by four female students accusing Ricci of sexual misconduct. While the allegations in the statements differed substantially from the versions of the four incidents later found to be fact by the Panel, nothing in the record intimates that the Board's actions were inconsistent with an impartial review of the Panel's findings or detracted from the appearance of fairness of the Board's ultimate determinations. The mere fact that discrepancies existed between the allegations and the facts subsequently found by the Panel does not impugn the Board's impartiality and fairness. The Board's Resolution and Order of Dismissal did not refer to the students' allegations; rather, it cited only the facts expressly found by the Panel. In the absence of evidence to the contrary, we must presume that the Board, after reviewing the Panel's findings, acknowledged that the Panel had implicitly rejected many of the students' allegations and forbore from considering them in its subsequent deliberations. *See Public Utilities Commission v. District Court, supra; United States v. Litton Industries, supra; Hercules, Inc. v. Environmental Protection Agency, supra.*

We therefore hold that the Board did not err by receiving and considering the four statements in the course of its preliminary inquiry into the charges filed against Ricci by the District.

---

**10.** In *Weissman v. Board of Education, supra*, as noted earlier, we construed "immorality" to mean conduct indicating an unfitness to teach and, so construed, upheld the statute against a constitutional vagueness challenge.

## V.

Lastly Ricci contends that he was denied due process of law by the Panel's refusal to grant his motions to make the charges more definite and to permit discovery. We disagree.

Section 22–63–117(6) provides that the chairman of a hearing panel "may . . . do all other acts performed by an administrative hearing officer." Section 24–4–105(4), C.R.S.1973, which delineates the duties and powers of an administrative hearing officer, provides in pertinent part:

"[A]ny hearing officer shall have authority to . . . dispose of motions relating to the discovery and production of relevant documents and things for inspection, copying and photographing . . . dispose of procedural requests, or similar matters . . . and take any other action authorized by agency rule consistent with this article or in accordance, to the extent practicable, with the procedure of the district courts."

Procedure in the district court is governed by the Colorado Rules of Civil Procedure. C.R.C.P. 12(e) authorizes a party to move "for a more definite statement of any matter which is not averred with sufficient particularity to enable him properly to prepare his responsive pleading." C.R.C.P. 26–37 authorize comprehensive pre-trial discovery intended to facilitate the simplification of issues and avoid surprises at trial. *See Crist v. Goody*, 31 Colo.App. 496, 507 P.2d 478 (1972). There is, therefore, little doubt that it was within the Panel chairman's discretion to grant Ricci's motions.

The question, however, is whether the Panel's denial of Ricci's motions denied him due process of law. It is axiomatic that a party's due process rights are not infringed unless he has been prejudiced by the administrative procedures to which he objects. No such prej ice has been shown here.

The procedures followed by the District and Panel complied in all relevant respects with the provisions of section 22–63–117. We have previously held that the procedures prescribed by the Teacher Tenure Act afford a tenured teacher due process of law. *Umberfield v. School District No. 11*, 185 Colo. 165, 522 P.2d 730 (1974). Moreover, in addition to the statutorily required notice to Ricci of the charges filed with the Board, the District also furnished him with copies of the signed statements of the four complaining students, a summary of the expected testimony of the fifth student, and a list of the District's prospective witnesses and summaries of their expected testimony. Under these circumstances it cannot be argued credibly that Ricci was kept in ignorance of the bases and substance of the charges against him or hindered in preparing his defense. *See Dugan v. Bollman*, 31 Colo.App. 261, 502 P.2d 1131 (1972); *Ferguson v. Thomas*, 430 F.2d 852 (5th Cir. 1970). *Cf. Board of Trustees, Larimee County School District No. 1 v. Spiegel*, Wyo., 549 P.2d 1161 (1976).

Any residual prejudice to Ricci is dispelled by our disposition of his appeal. Ricci's motion to make the charges more definite and certain was directed to the purportedly vague allegation that "other good and just cause" existed for his dismissal. Since we have upheld his dismissal on the independent statutory ground of "immorality" indicating unfitness to teach, the Panel's denial of this motion had no prejudicial impact on the outcome of this litigation.

Second, Ricci's motion to permit discovery sought authorization to depose the students who complained of his sexual misconduct. Although he had been furnished with their signed statements describing the behavior which gave rise to the immorality charge—and although he fully and vigorously cross-examined the complaining students at the hearing—Ricci argues that he was denied due process because one student testified to an incident which had not been mentioned in her statement. However, a review of the record discloses that the Panel made no findings with respect to this incident. Since we have held that the Board's finding of "immorality" is warranted within the four corners of the Panel's findings, the

omitted incident lends no support to the Board's decision. It follows that the Panel's denial of Ricci's motion to permit discovery did not prejudice his defense to the immorality charges.[11]

In the absence of any demonstrable prejudice to Ricci, we conclude that the denial of his motion to make the charges more definite and permit discovery did not deny him due process of law.

Judgment affirmed.

---

11. We leave for another day the question when and under what circumstances a party to an administrative adjudication has a due process right to pre-hearing discovery. *See* 1 *K. Davis, Administrative Law Treatise, supra,* § 8.15; *K.* *Davis, Administrative Law of The Seventies,* § 8.15 (1976); *cf. People's Natural Gas Division v. Public Utilities Commission,* Colo., 626 P.2d 159 (1981).