Linda HARVEY, Petitioner-Appellant,

v.

JEFFERSON COUNTY SCHOOL DISTRICT NO. R-1, Respondent-Appellee.

No. 84SA227.

Supreme Court of Colorado,
En Banc.

Dec. 16, 1985.

M. Kathryn Bradley, Denver, for petitioner-appellant.

Sherman & Howard, William F. Schoeberlein, Mary Volk Gregory, Denver, for respondent-appellee.

KIRSHBAUM, Justice.

The petitioner, Linda Harvey, seeks review of an order of the Board of Education of Jefferson County School District No. R-1 (the Board) dismissing her from her position as a tenured teacher.[1] She argues that during the administrative proceedings which culminated in her dismissal, the rulings of the hearing officer and the conduct of the School District's attorney and of the Board violated constitutional guarantees of due process of law and certain provisions of the Colorado Teacher Employment, Dismissal and Tenure Act of 1967 (the Act), §§ 22-63-101 to -118, 9 C.R.S. (1973 & 1985 Supp.). She also asserts that section 22-63-116 of the Act, insofar as it authorizes dismissal of a tenured teacher for "other good and just cause," is void for vagueness.[2] We affirm in part, reverse in part, and remand with directions.

The petitioner became a tenured language arts teacher in Jefferson County School District No. R-1 (the District) in 1979. In February of 1981, the petitioner distributed to her ninth grade literature class for instructional purposes a short story she had written. A parent of one of those students filed a written complaint with the school administration objecting to the language, subject and theme of the story. The story was ultimately banned by the Board from use in the classroom.

On March 8, 1982—prior to the Board's final decision to prohibit further use of the story as a teaching aid—the superintendent of the District filed a request with the Board to institute proceedings to dismiss the petitioner. The request asserted that the petitioner's conduct constituted insubordination, neglect of duty, and "other good and just cause" for dismissal, pursuant to section 22-63-116, 9 C.R.S. (1985 Supp.), of the Act. On March 18, 1982, the Board adopted a resolution accepting the charges for review and suspending the petitioner with pay.

The petitioner requested a hearing, and a hearing was scheduled to commence on June 7, 1982. However, on that date the petitioner requested a continuance of the proceedings, noting that her counsel had withdrawn his appearance, albeit at the petitioner's request,[3] and that the Colorado Education Association had agreed to provide her with an attorney. The District vigorously opposed the motion. The hearing officer assigned to the case granted the petitioner's request, but also ordered the suspension of the petitioner's pay during the period of the continuance.

The hearing, which actually began on July 14, 1982, consisted of twenty-four days of testimony and argument interspersed over a period of some four months because of conflicting schedules among the participants. Closing arguments were presented on November 4, 1982, and the hearing officer's findings of fact and recommendation were issued on December 20, 1982. In a thirty-eight page written report, the hearing officer concluded that the charges against the teacher were substantiated by the evidence[4] and that the petitioner's dismissal was warranted.

---

1. Section 22-63-117(11), 9 C.R.S. (1985 Supp.), provides for judicial review of a tenured teacher's dismissal action in the Court of Appeals. However, because petitioner challenges the constitutionality of § 22-63-116, the appeal was transferred to this court pursuant to § 13-4-110(1)(a), 6 C.R.S. (1973).

2. Section 22-63-116 provides in pertinent part:
 The grounds for dismissal of a tenure teacher shall be physical or mental disability, in-

competency, neglect of duty, immorality ... insubordination, or other good and just cause.

3. At a hearing on June 7, 1982, the hearing officer found that the withdrawal of petitioner's original counsel "was because of matters which in no way are chargeable as fault to either one." A primary issue appeared to be petitioner's ability to pay her attorney.

4. However, the hearing officer specifically found that petitioner's use of a pamphlet in

Specifically, the hearing officer found that the evidence disclosed two incidents of insubordination, neither of which was alone sufficient to justify dismissal. With regard to the charge of neglect of duty, the hearing officer found that the petitioner had failed to teach the whole curriculum, failed to follow the school's attendance policies, failed to prepare written lesson plans, failed to conform to the District's conflict of interest policy, and failed to record grades. The hearing officer concluded that the petitioner's failure to teach her students all of the prescribed curriculum in and of itself constituted a sufficient ground for the recommendation of her dismissal.[5] The hearing officer also found that the petitioner's defiant manner when faced with problems—an attitude which, according to the hearing officer, was graphically illustrated by her conduct during the hearing—and her hostile manner in discussions with parents and students concerning criticism constituted additional good and just cause for dismissal.

The petitioner, her attorney and the District's attorney were notified of the hearing officer's findings of fact and recommendation and were also notified that the Board would consider the matter on January 13, 1983. Each party was invited to submit a written statement of position with respect to the hearing officer's report and to present an oral statement to the Board at the January 13 meeting. The District's attorney submitted a letter setting forth the District's position and included therewith a proposed resolution for the Board to adopt. So far as can be ascertained from the record, petitioner did not submit any written statement to the Board. However, an attorney did appear on the petitioner's behalf at the January 13, 1983, meeting,

and that attorney read to the Board a statement prepared by the petitioner. The District's attorney rebutted several items in the petitioner's statement and otherwise relied on his previously submitted written statement. After further discussion, the Board voted unanimously to adopt the hearing officer's findings of fact and recommendation and entered a resolution dismissing the petitioner from her employ with the District.

In her appeal, the petitioner presents five grounds in support of her request for reversal of the Board's order: that the District's attorney who prosecuted the case before the hearing officer acted improperly at the Board's January 13, 1983, meeting; that the Board considered evidence not in the record; that the provision of the Act authorizing dismissal of a tenured teacher for "other good and just cause" is unconstitutionally vague; that the hearing officer's findings of basic fact and the Board's findings of ultimate fact were unsupported by substantial evidence; and that the hearing officer's suspension of petitioner's pay during the period of continuance violated the Act. Although we agree with her last contention, we reject the petitioner's other arguments.

I

The petitioner first argues that the attorney who represented the District in prosecuting the case before the hearing officer improperly influenced the Board's decision at the January 13, 1983, meeting, thereby violating the petitioner's constitutional right to due process of law. She relies upon two decisions of this court to support her argument: *Weissman v. Board of Education*, 190 Colo. 414, 547 P.2d 1267 (1976), and *Board of Education*

---

which was printed the controversial short story, *Scatha Testing on Livestock*, did not constitute insubordination. He found, as a matter of fact, that petitioner used the story under a good faith belief that the principal's earlier directive barring the story was superseded by submission of the matter to the curriculum subcommittee.

**5.** Testimony at the hearing established that strict adherence to the curriculum guidelines

was necessitated by the year-round structure of petitioner's school. The year-round schedule of tracking resulted in students having several different teachers over the course of what would otherwise be one grade of a subject; thus, consistency of curriculum among the teachers in a particular department at petitioner's school was a high priority.

*v. Lockhart,* 687 P.2d 1306 (Colo.1984). Neither of those cases is directly applicable to the circumstances here. In *Weissman,* the attorney for the school district not only prosecuted the case against the teacher during the dismissal hearing but actually met with the board in a private deliberative session from which the teacher's attorney was excluded. Although we found that such conduct had not prejudiced the teacher, we noted that it was inappropriate, and made the following observation:

> In the future, counsel who has played such a role in the proceedings should take no part in the final deliberations of the board, in order to avoid any appearance of impropriety or unfairness.

*Weissman,* 190 Colo. at 425, 547 P.2d at 1276. In *Lockhart,* the attorney who had prosecuted the case against the teacher not only participated in the school board's deliberative session but actually informed the board that the evidence in the record supported the hearing officer's findings of fact and advised the board that the attorney representing the teacher should not be permitted to make a statement. We found the board's decision to permit the prosecuting attorney to participate in the board's deliberations while denying the teacher's attorney any opportunity to discuss the state of the record with the Board to be indefensible, in the following language:

> [T]hat the board's action in permitting a school district's attorney to be present during its deliberative session and to advise it on the state of the evidence presented to the hearing officer, while simultaneously refusing to entertain any statement from the teacher's attorney on the sufficiency of evidence, was clearly in violation of our admonition in *Weissman.* The conduct of the board in this respect was tantamount to permitting the school district's attorney to participate, unilaterally and to the exclusion of the teacher's attorney, in the deliberative

process of the board—a procedure inimical to the appearance, if not the reality, of fairness.

*Lockhart,* 687 P.2d at 1309.

The facts of this case are far removed from the circumstances giving rise to our decisions in *Weissman* and *Lockhart.*[6] Here, the attorney who prosecuted the case did not participate in any private deliberative session; indeed, the Board's deliberative session was conducted in public on January 13, 1983, and the petitioner's attorney attended. Prior to that meeting, the petitioner was expressly invited to submit to the Board a written statement of position with respect to the hearing officer's report and to present an oral statement to the Board at that meeting. The Board in no manner restricted the ability of the petitioner's attorney to contest any aspect of the administrative proceedings. While the resolution dismissing the petitioner was submitted in draft form by the District's attorney, the record does not indicate that the petitioner was prohibited from submitting a draft resolution rejecting the hearing officer's recommendation. We cannot conclude from the record before us that the prosecuting attorney in any way improperly participated in or unduly influenced the Board's decision-making process. *See Mondragon v. Poudre School District,* 696 P.2d 831 (Colo.App.1984). In this case, we find nothing in the conduct of the Board or of the District's attorney to suggest that the petitioner was deprived of that concept of fundamental fairness so important to preserve and so difficult of precise delineation which lies at the heart of the due process clauses of the United States and Colorado Constitutions.

## II

██ The petitioner next argues that in arriving at its decision to dismiss her the Board impermissibly considered aspects of

---

**6.** As the respondent points out in its answer brief on appeal, the general counsel to the Board, Richard Bump, was present during the January 13, 1983, Board meeting and advised the Board on a procedural matter with respect to the resolution dismissing the petitioner. Thus, the Board had available to it its own attorney, and the District's attorney was not in any sense the Board's attorney at the January 13, 1983, meeting.

the controversy which arose over the distribution of her original short story, entitled *Scatha Testing on Livestock,* which were not part of the record of the proceedings before the hearing officer. The petitioner bases this argument on the following statement made by one Board member at the January 13, 1983, open meeting:

> It might also be well to comment that I think the story—its position in the whole subject of the dismissal has been blown out of proportion. I think the dismissal was based on many, many other causes, and that that was basicly [sic] ruled not a primary cause of the dismissal.

The petitioner contends that by referring to the story as not "a primary cause" of her dismissal, that Board member and, arguably, others did consider it to be one cause for dismissal. The full record of the January 13, 1983, proceeding does not support the petitioner's argument. *See Hadley v. Moffat County School District,* 681 P.2d 938 (Colo.1984).

It is axiomatic that the Board must accept the findings ·of the hearing officer when such findings are supported by the evidence. *Ricci v. Davis,* 627 P.2d 1111 (Colo.1981); *Blair v. Lovett,* 196 Colo. 118, 582 P.2d 668 (1978). The hearing officer's report does contain a lengthy discussion of the short story incident; however, the evidence supports the findings of fact articulated by the hearing officer, and the petitioner does not assert that those findings are in error. The final paragraph of the hearing officer's report states as follows:

> The recommendation is not made lightly. The Teacher's creative talent, imaginativeness, intelligence and ability to inspire some students to learn are impressive. If accompanied by a constructive attitude and cooperative behavior, these qualities would be valuable for this or any other school district. The hearing officer also recognizes that it is possible that Ms. Harvey, or persons looking only

at the result and not reading this decision, could misconstrue this recommendation. It is emphatically *not* punishment of the Teacher for the point of view expressed in the *Scatha* story, nor is it vindication of Mr. Harrison's attack on her. The evidence presents a picture of a defiant and obstructive person whose attitude and actions made her disruptive to the educational process at her school, and who was not presenting the entire curriculum of the district to her students. It is this, not the tone of her literary efforts, which leads to the recommendation of dismissal.

In fact, at the decisional meeting another Board member responded to the comment upon which the petitioner relies by observing as follows:

> It wouldn't hurt to read the last couple of lines of the report to us stating that it is emphatically not—the recommendation for dismissal is emphatically not punishment of the teacher for points of view expressed in the *Scatha* story nor is it vindication of Mr. Harrison's attack on her.

The isolated sentence upon which the petitioner relies does not support her contention that the Board, contrary to the hearing officer's conclusions, dismissed her because of her distribution of a controversial short story.

 As a corollary, the petitioner contends that the Board's earlier involvement in the review of her short story tainted the Board's impartiality in its consideration of her dismissal.[7] However, the petitioner cites no portion of the record to support this theory. In fact, the record of the Board's deliberations at the January 13, 1983, meeting evidences a decided caution with respect to the short story issue and a pronounced desire to avoid any suggestion that the petitioner was being punished because of the content of that story. Absent

---

7. After the principal of petitioner's school forbade petitioner from further use of the short story, the story was submitted to a curriculum subcommittee composed of teachers, administrators and citizens for review. After consider-

ing the story and testimony by various witnesses, the subcommittee recommended that the story was inappropriate for classroom use. The Board adopted the subcommittee's recommendation at a public session on April 8, 1982.

some evidence to the contrary, it must be presumed that the Board's decision to dismiss petitioner was impartial and based on the evidence in the record. *See deKoevend v. Board of Education,* 688 P.2d 219 (Colo. 1984); *Ricci v. Davis,* 627 P.2d 1111; *Weissman v. Board of Education,* 190 Colo. 414, 547 P.2d 1267. The presumption has not been rebutted by the petitioner.

## III

The petitioner has challenged the constitutionality of the provision in section 22–63–116, 9 C.R.S. (1985 Supp.), authorizing dismissal of a tenured teacher for "other good and just cause." However, it is well-established that this court will not address a constitutional question which is not essential to the disposition of the case before it. *Board of County Commissioners v. City & County of Denver,* 194 Colo. 252, 571 P.2d 1094 (1977); *Friedman v. Motor Vehicle Division of Department of Revenue,* 194 Colo. 228, 571 P.2d 1086 (1977). Because the hearing officer found, and the Board adopted the finding, that the petitioner's neglect of duty was sufficient in and of itself to warrant her dismissal, we need not address the constitutional issue.[8]

## IV

■ The petitioner next challenges the hearing officer's findings of fact as unsup-

---

8. In *Ricci v. Davis,* 627 P.2d 1111 (Colo.1981), we similarly declined to decide whether the term "other good and just cause" as used in the Act is unconstitutionally vague, where the teacher's dismissal was justified by other grounds. *See also Thompson v. Board of Education,* 668 P.2d 954 (Colo.App.1983).

9. The two incidents for which the petitioner was found to have been insubordinate were the petitioner's refusal to hold a meeting with the principal and six students about the students' roles in an upcoming play and the petitioner's refusal to remain at a parent conference after being told she could not tape record the conference. The basic facts surrounding each of the two incidents are as follows: The petitioner was in charge of a drama production to be performed in July 1981. Six students, upset over the assignment of roles in the play, went to Mr. Horn, the principal. Mr. Horn requested and then demanded on penalty of insubordination that

ported by the evidence in the record. Section 22–63–117(11) authorizes judicial review pursuant to section 24–4–106, 10 C.R.S. (1982). Section 24–4–106(7) provides that findings of fact may not be set aside unless the findings of fact are clearly erroneous or unsupported by substantial evidence in the whole record. *See Ricci v. Davis,* 627 P.2d 1111.

The record in this case is voluminous, consisting of approximately 385 exhibits and thirty-five volumes of transcript containing testimony of thirty-four witnesses. The parents, students, teachers and administrators who testified invariably offered contrasting views of the petitioner's attributes and professional skills. The hearing officer's findings by necessity resolved many such evidentiary conflicts.

The hearing officer found that the petitioner was insubordinate on two separate occasions. Various witnesses presented ample testimony as to the basic facts surrounding the two incidents,[9] and there were no substantial disputes as to these incidents. However, the hearing officer expressly concluded that neither of these two incidents was sufficient alone to warrant petitioner's dismissal, and that even in combination they did not support the District's request for dismissal.

The hearing officer found that the petitioner neglected her professional duty in

---

the petitioner hold a meeting prior to the production date of the play with himself and the six students to discuss the students' concerns. The petitioner refused to schedule such a meeting.

Secondly, Mr. Horn arranged a parent conference between himself, the petitioner, and two parents concerned in part with the petitioner's controversial short story. The petitioner entered the conference room with a tape recorder and proceeded to set it up. One of the parents inquired whether the petitioner intended to record the conference. When the petitioner responded in the affirmative, Mr. Horn told her that he would not permit her to record the conference. Although Mr. Horn warned the petitioner on penalty of insubordination to remain and participate in the conference, she left the room and did not return. The petitioner testified that she left the room because she was about to cry; however, the fact remains that she did not return to the meeting and that she disobeyed her supervisor's direct order.

the following respects: failure to take attendance in accordance with school policies; failure to prepare weekly written lesson plans; failure to record grades in a gradebook; violations of the District's conflict of interest policies; and failure to teach the entire curriculum required by the District to her students. This last item was found by the hearing officer to have been sufficient alone to warrant the petitioner's dismissal. Testimony by parents, teachers and administrators supported the hearing officer's findings. *See Robertson v. Board of Education,* 39 Colo.App. 462, 570 P.2d 19 (1977). Although the petitioner presented contrary evidence, the hearing officer's resolution of these factual disputes is supported by the record. We, therefore, cannot disturb those findings. *Ricci v. Davis,* 627 P.2d 1111.[10]

In sum, contrary to the petitioner's argument, the hearing officer's findings of fact are fully supported by the evidence.

### V

 The petitioner also argues that the hearing officer erred in suspending the petitioner's pay for the period of time during which the hearing was continued due to petitioner's acquisition of new counsel. Section 22–63–117(12) provided, at the time of petitioner's dismissal hearing:

> If the board orders the dismissal of the teacher, the teacher's compensation shall be suspended as of the date of such

dismissal but in no event earlier than the date of the order.[11]

The above-quoted language leaves no room for discretion on the part of the hearing officer or the Board as to when a teacher's pay is to be suspended. Regardless of the reasons for the delay in petitioner's dismissal proceedings, the General Assembly in section 22–63–117(12) unambiguously provided that a tenured teacher who is the object of a dismissal proceeding must be paid his or her salary until such date as the Board finally enters an order of dismissal.[12] Accordingly, the Board erred in approving the hearing officer's suspension of the petitioner's pay during the period of continuance.

The order of dismissal is affirmed, except that portion thereof denying pay to the petitioner during the period for which a continuance was granted. Accordingly, the cause is remanded to the Board with directions to pay petitioner the salary erroneously withheld, together with interest thereon.

---

**10.** The hearing officer also found other good and just cause for petitioner's dismissal in her difficult relations with teachers, administrators and parents which, he found, impeded communication essential to effectiveness in teaching. The hearing officer limited his finding of other good and just cause to that which would affect petitioner's employment as a teacher. *See Weissman,* 190 Colo. 414, 547 P.2d 1267. Because we need not decide whether the statutory phrase "other good and just cause" violates constitutional due process guarantees, *see supra* note 8, we do not consider whether the evidence of other good and just cause supports the hearing officer's finding.

**11.** Section 22–63–117(12) now provides for loss of pay due to a teacher's failure to meet the deadline for striking a name from the list of hearing officers. § 22–63–117(12), 9 C.R.S. (1985 Supp.).

**12.** A teacher may agree to forgo pay as a condition to receiving a continuance in the hearing process. *See Rosenberg v. The Board of Education of School District No. 1,* 710 P.2d 1095 (Colo.1985). However, where, as here, a teacher refuses to agree to such a condition, the hearing officer may not then condition his or her grant of a continuance on the suspension of the teacher's pay.